UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**JONATHAN GAFFERS,** individually,
and on behalf of others similarly situated,

      Plaintiffs,

vs.

**KELLY SERVICES, INC.,**
a Michigan corporation

      Defendant.

Case No. _____

Hon. _____

_____

SOMMERS SCHWARTZ, P.C.
BY:   Kevin J. Stoops (P64371)
       Jesse L. Young (P72614)
Attorneys for Plaintiffs
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

_____

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, JONATHAN GAFFERS, individually and on behalf of all others

similarly situated, by and through her attorneys, hereby bring this Collective/Class

Action Complaint against Defendant, KELLY SERVICES, INC., and states as

follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Jonathan Gaffers ("Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, Kelly Services, Inc. (hereinafter referred to as "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for breach of contract.

2.      According to its website, Defendant "Kelly Services, Inc. (NASDAQ: KELYA, KELYB) and its subsidiaries, offer a comprehensive array of outsourcing and consulting services as well as world-class staffing on a temporary, temporary-to-hire, and direct-hire basis. Kelly® has a role in managing employment opportunities for more than one million workers around the globe by employing 550,000 of these individuals directly with the remaining workers engaged through its talent supply chain network of supplier partners. Revenue in 2014 was $5.6 billion." *See* http://www.kellyservices.com/Global/AboutUS/.

3.      Defendant offers call center services through a program called KellyConnect®, which is a comprehensive call center solution for its customers. Through KellyConnect, Defendant employs call center agents in a number of different environments (*e.g.*, brick-and-mortar sites and on-site at its clients' locations), but predominantly employs them in the virtual (at-home) call center

2

environment.  *See*   http://www.kellyservices.us/US/KellyConnect-WorkAtHome/ (YouTube video).

4.     Defendant does not compensate its home-based customer care agents (hereinafter "HBCCAs") for all work performed including work performed at the beginning of each shift in connection with starting and logging into various computer programs and applications; during each shift in connection with technical issues; and subsequent to each shift in connection with shutting down and logging out of various computer programs and applications. Defendant's compensation policies result in HBCCAs not being paid for all time worked and for all of their work, including overtime, in violation of the FLSA and state contract law.

5.     Defendant's HBCCAs use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities.  These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them.

6.     All of Defendant's HBCCAs perform the same basic job duties and are required to use the same computer programs, software programs, servers and applications.

7.     Defendant's HBCCA jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage.

8.     The U.S. Department of Labor recognizes that call center jobs, like

those held by Defendant's HBCCAs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.   One of those abuses, which occurred in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."   Fact Sheet #64 at p. 2.

9.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:   "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."   Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."   *Id*.

10.     Plaintiff is employed by Defendant as an HBCCA in Bradenton, Florida.

11.     In order to perform his job, prior to each shift Plaintiff is required to start-up and log-in to various secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process takes substantial time on a daily basis with said time ranging from 10

4

to 15 minutes per day.

12.     At the end of each shift, Plaintiff is required to shutdown and log-out of the various secure computer programs, software programs, servers and applications that he utilized during his shift. The shutdown and log-out process takes substantial time on a daily basis with said time ranging from 3 to 5 minutes per day.

13.     Pursuant to Defendant's compensation policies, Plaintiff and other HBCAAs are only paid a per shift maximum of 10 minutes for the time they work in connection pre-shift start-up and log-in and post-shift shutdown and log-out functions. Upon information and belief, the 10 minutes per day is allotted as follows: 5 minutes designated for pre-shift start-up and log-in time, the remaining 5 minutes is allotted for post-shift shutdown and log-out functions.

14.     Accordingly, Defendant fails to pay its HBCAAs for no less than 3 to 10 minutes per day of work performed in connection with the pre-shift and post-shift activities.

15.     The unpaid time Plaintiff and the putative Class spend starting up and logging into each session directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

16.     Likewise, the unpaid time Plaintiff and the putative Class spend shutting down and logging out of each session directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

5

17.   Additionally, at periodic times both prior to or during his work shifts Plaintiff is disconnected from Defendants' computer systems and/or software programs/applications.

18.   Pursuant to Defendant's policies, Plaintiff and the putative Class are required to place a telephone call to Defendant's technical support line when experiencing technical issues.

19.   Defendant fails to pay Plaintiff and its HBCAAs for all time they spend dealing with pre- or mid-shift technical issues.

20.   Pursuant to Defendant's policies, Plaintiff and other HBCAAs are only paid for the time they are actually speaking to a member of Defendant's technical support team, and in no event are they paid for more than 1 hour of time.

21.   Consequently, Defendant fails to pay Plaintiff and its HBCAAs' for:

    a.   Time spent on hold waiting to speak to a member of Defendant's technical support team – which often times takes 10 to 15 minutes or longer;

    b.   Time spent waiting for a return call from a member of Defendant's technical support team – which often times takes 3 to 4 hours or longer;

    c.   Any time spent dealing with the technical issue that exceeds 1 hour; and

    d.   Time spent performing start-up and log-in procedures once the technical issue is resolved.

22.   The unpaid time Plaintiff and the putative Class spend in connection

with technical issues directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

23.     Defendant's technical downtime compensation policies result in Plaintiff and the putative Class being withheld substantial compensation on a daily and weekly basis.

24.     Defendant knew or could have easily determined how long it takes for its HBCCAs to complete the pre-shift start-up and log-in process, and the post-shift log-out process, and Defendant could have properly compensated Plaintiff and the putative Class for the off-the-clock work they performed, but did not.

25.     Defendant know or could have easily determined the amount of unpaid time that its HBCCAs spend in connection with technical issues and could have paid the employees for this time, but did not.

26.     Plaintiff brings this action on behalf of himself and all other similarly situated HBCCAs to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## **JURISDICTION AND VENUE**

27.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

28.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

29.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's HBCCAs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

30.     This Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and Defendants are citizens of different states.

31.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located within the State of Michigan, because it conducts business within the State of Michigan, and because it is registered with the Michigan Department of Licensing and Regulatory Affairs.

32.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District, and a substantial portion of the events that give

rise to the Plaintiff's claims occurred in this District.

## PARTIES

33.     Plaintiff, Jonathan Gaffers, is a resident of Brandenton, Florida, who has worked for Defendant as a HBCAA since June 2014.  Mr. Gaffers signed a consent form to join this lawsuit, which is attached to this Complaint as *Exhibit A*.

34.     Defendant Kelly Services, Inc., is a Delaware corporation headquartered in Troy, Michigan.   Defendant is licensed to do business in the State of Michigan and its registered agent for service of process in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

## GENERAL ALLEGATIONS

35.     Plaintiff, Jonathan Gaffers, has been employed by Defendant as a HBCCA since June 2014 earning an hourly wage in the range of $10.00 to $11.00 per hour.

36.     In order to perform his job, prior to each shift Plaintiff is required to start-up and log-in to various secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process takes substantial time on a daily basis with said time ranging from 10 to 15 minutes per day.

37.     At the end of each shift, Plaintiff is required to shutdown and log-out of the various secure computer programs, software programs, servers and applications

that he utilized during his shift. The shutdown and log-out process takes substantial time on a daily basis with said time ranging from 3 to 5 minutes per day.

38.     Pursuant to Defendant's compensation policies, Plaintiff and other HBCAAs are only paid a per shift maximum of 10 minutes for the time they work in connection pre-shift start-up and log-in and post-shift shutdown and log-out functions. Upon information and belief, the 10 minutes per day is allotted as follows: 5 minutes designated for pre-shift start-up and log-in time, the remaining 5 minutes is allotted for post-shift shutdown and log-out functions.

39.     Accordingly, Defendant fails to pay its HBCAAs for no less than 3 to 10 minutes per day of work performed in connection with the pre-shift and post-shift activities.

40.     The unpaid time Plaintiff and the putative Class spend starting up and logging into each session directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

41.     Likewise, the unpaid time Plaintiff and the putative Class spend shutting down and logging out of each session directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

42.     Additionally, at periodic times both prior to or during his work shifts Plaintiff is disconnected from Defendants' computer systems and/or software programs/applications.

43.   Pursuant to Defendant's policies, Plaintiff and the putative Class are required to place a telephone call to Defendant's technical support line when experiencing technical issues.

44.   Defendant fails to pay Plaintiff and its HBCAAs for all time they spend dealing with pre- or mid-shift technical issues.

45.   Pursuant to Defendant's policies, Plaintiff and other HBCAAs are only paid for the time they are actually speaking to a member of Defendant's technical support team, and in no event are they paid for more than 1 hour of time.

46.   Consequently, Defendant fails to pay Plaintiff and its HBCAAs' for:

    a.   Time spent on hold waiting to speak to a member of Defendant's technical support team – which often times takes 10 to 15 minutes or longer;

    b.   Time spent waiting for a return call from a member of Defendant's technical support team – which often times takes 3 to 4 hours or longer;

    c.   Any time spent dealing with the technical issue that exceeds 1 hour; and

    d.   Time spent performing start-up and log-in procedures once the technical issue is resolved.

47.   The unpaid time Plaintiff and the putative Class spend in connection with technical issues directly benefits Defendant and this process is an essential part of Plaintiff's job responsibilities as a HBCCA.

48.   Defendant's technical downtime compensation policies result in

11

Plaintiff and the putative Class being withheld substantial compensation on a daily and weekly basis.

49.     Defendant knew or could have easily determined how long it takes for its HBCCAs to complete the pre-shift start-up and log-in process, and the post-shift log-out process, and Defendant could have properly compensated Plaintiff and the putative Class for the off-the-clock work they performed, but did not.

50.     Defendant know or could have easily determined the amount of unpaid time that its HBCCAs spend in connection with technical issues and could have paid the employees for this time, but did not.

51.     At an estimated 3 to 10 minutes per day of unpaid pre-shift computer start-up and log-in time and post-shift log-out time, plus several additional unpaid minutes or hours dealing with technical issues, Plaintiff and the putative Class are owed substantial back pay prior to liquidation and interest.

52.     Some examples of specific workweeks where Defendant failed to pay Plaintiff for hours worked in excess of 40 hours (as mandated by the FLSA) include the following:

   a.     Week of December 29, 2014:

   ➢ Plaintiff was paid for 40 hours of regular time and 0.46 hours of overtime (*Exhibit B*).

   ➢ With pre-shift and post-shift time of 3 to 10 minutes per shift, Plaintiff should have been paid an additional 15 to 60 minutes of overtime for the week. Thus, Plaintiff is entitled to

overtime wages within a range of 15 to 60 minutes. Additionally, Plaintiff is entitled to overtime wages in association with any unpaid work related to technical issues experienced during the workweek.

b.     Week of December 29, 2014:

➢ Plaintiff was paid for 40 hours of regular time and 0.70 hours of overtime (*Exhibit C*).

➢ With pre-shift and post-shift time of 3 to 10 minutes per shift, Plaintiff should have been paid an additional 15 to 60 minutes of overtime for the week. Thus, Plaintiff is entitled to overtime wages within a range of 15 to 60 minutes. Additionally, Plaintiff is entitled to overtime wages in association with any unpaid work related to technical issues experienced during the workweek.

53.     At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the unpaid and off-the-clock work Plaintiff performed.

54.     At all relevant times, Defendants controlled Plaintiff's work schedule, duties, protocols, applications, assignments and employment conditions.

55.     At all relevant times, Defendant was able to track the amount of time that Plaintiff and the putative Class spent in connection with the pre-shift, post-shift, and technical issues, described herein but failed to pay Plaintiff and the putative Class for the work they performed in connection with these tasks each shift.

56.     At all relevant times, Plaintiff and the Class members were non-exempt hourly employees, subject to the requirements of the FLSA.

57.     At all relevant times, Defendant used its adherence and attendance policies against Plaintiff for his pre-shift, mid-shift and post-shift time worked and failed to pay for that time.

58.     At all relevant times, Defendant's policies and practices deprived Plaintiff and the putative Class of wages owed for the pre-shift, post-shift, and technical issue time Plaintiff and the putative Class worked.

59.     Defendant is a leader in the field of call center services and knew or should have known that Plaintiff and other HBCCAs' time spent starting up, logging in to and logging out of Defendants' computer systems, servers and programs, and time spent in connection with technical issues, is compensable under the FLSA and state contract law.

## COLLECTIVE ACTION ALLEGATIONS

60.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> All current and former hourly home-based customer care agents who worked for Defendant at any time during the last three years.

(hereinafter referred to as the "Class").  Plaintiff reserves the right to amend this definition if necessary.

61.     Excluded from the Class are all Defendant's executives, administrative and professional employees, including computer professionals and outside sales

persons.

62.    With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).   The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

63.    The employment relationship between Defendant and every Class member are the same and differ only by name, location, and rate of pay.   The key issues – the amount of uncompensated pre-shift start-up and log-in time, time associated with technical issues, and post-shift shutdown and log-out time owed to each employee – does not vary substantially from Class member to Class member.

64.    The key legal issues are also the same for every Class member, to wit: whether the 3 to 10 minutes of unpaid pre-shift and post-shift time per shift, and the substantial unpaid time spent in association with technical issues, is compensable under the FLSA.

65.    Plaintiff estimates that the putative Class, including both current and former employees over the relevant period, includes several thousand members. The precise number of Class members should be readily available from a review of

Defendant's personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

66.    Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former hourly home-based customer care agents who worked for Defendant at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").   Plaintiff reserves the right to amend this definition if necessary.

67.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members.   Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

68.    There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.   These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether the pre-shift time Rule 23 Nationwide Class members spend on start-up and log-in activities each session is compensable time;

b.   Whether the unpaid time Rule 23 Nationwide Class members spend in connection with technical issues is compensable time;

c.   Whether the post-shift time Rule 23 Nationwide members spend on shutdown and log-out activities is compensable time; and

d.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract.

69.   Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

70.   Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and he retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

71.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual

along with the fear of reprisal by their employer.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

72.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

73.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

74.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## (29 U.S.C. § 216(b) Collective Action)

## <u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u>
## <u>29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME</u>

75.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

76.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

77.     At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

78.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

79.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

80.     At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform 3 to 10 minutes of pre-shift computer start-up/log-in time and post-shift shutdown/log-out time per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

81.     At all times relevant to this action, Defendants failed to pay Plaintiff and all similarly situated current and former Class members' compensation for work they performed related to technical issues associated with Defendant's computer programs and software.

82.     The pre-shift, technical issues, and post-shift unpaid work performed by Plaintiff and all similarly situated Class members every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

83.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated pre-shift start-up and log-in time, the uncompensated technical issue time, and the uncompensated post-shift shutdown and log-out time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

84.     Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

85.     Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for HBCCAs to perform the off-the-clock work they performed including the work they performed pre-shift, in connection with technical issues, and post-shift. Further, Defendant

could have properly compensated Plaintiff and the Class for these activities, but did not.

86.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**Count II**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

87.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

88.    At all times relevant to this action, Defendant had a contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate.

89.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

90.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, have an hourly rate between $10.00 and $11.00 per hour.

91.    Plaintiff and every other Rule 23 Nationwide Class member performed under the contract by doing their jobs and carrying out the work they performed each

shift including the unpaid work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift, technical issues, and post-shift activities.

92.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with pre-shift, technical issues, and post-shift activities, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

93.    Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

94.    Defendants also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Nationwide Class members spent performing the off-the-clock activities, which is a fundamental part of an "employer's job."

95.    As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiff and every other member of the Rule 23 Nationwide Class has been damaged, in an amount to be determined at trial.

96.    These claims are appropriate for nationwide class certification under

Rules 23(b)(2) and (b)(3) because the law of contracts is substantially the same throughout the United States.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.   An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.   An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.   An Order designating Plaintiff as the representative of the FLSA collective action Class, the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

e.   An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.   An Order declaring Defendant's violations of the FLSA were willful;

g.   An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Jonathan Gaffers, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

This, the 14th day of January 2016.

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

24