UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**JONATHAN GAFFERS,** individually, and on
behalf of others similarly situated,

       Plaintiffs,

vs.

       Case No. 16-10128

       Hon. David M. Lawson

**KELLY SERVICES, INC.,**
a Michigan corporation

       Defendant.

---

| SEYFARTH SHAW, LLP. | KIENBAUM OPPERWALL HARDY & |
|---|---|
| BY:    Gerald L. Maatman, Jr. | PELTON, P.L.C. |
| ***Attorneys for Defendant*** | BY:   William B. Forrest III |
| 131 S. Dearborn Street | ***Attorneys for Defendant*** |
| Suite 2400 | 280 North Old Woodward Avenue, Suite |
| Chicago, IL 60603 | 400 |
| 312-460-5000 | Birmingham, Michigan 48009 |
| gmaatman@seyfarth.com | Office:  248-645-0000 |
| | Fax:  248-723-1110 |
| | wforrest@kohp.com |

---

## <u>DECLARATION OF MELISSA TURANSKY</u>

       I, Melissa Turansky, based on my personal knowledge and pursuant to 28 U.S.C. § 1746,

declare as follows:

1.      I am a Senior Operations Manager, in the Outsourcing & Consulting Group for Kelly

Services, Inc. ("Kelly").  I am familiar with the positions and responsibilities of Kelly employees

in the Outsourcing & Consulting Group, including employees in Kelly's AppleCare, AOS, and

IT SC Programs, and I have personal knowledge regarding the matters described in this

declaration.

2.      I submit this declaration in support of Kelly's Response In Opposition To Plaintiff's Pre-Discovery Motion For Conditional Class Certification And Court-Supervised Notice Pursuant To 29 U.S.C. § 216(b).

3.      According to a review of Kelly's records, Plaintiff Jonathan Gaffers was employed by Kelly as an AppleCare Tier 1 Advisor from June 30, 2014 through April 14, 2016.

4.      According to a review of Kelly's records, Margaret Key was employed by Kelly as an AppleCare Tier 1 Advisor from May 10, 2012 through August 26, 2012, as an AppleCare Tier 2 Advisor from August 27, 2012 through June 15, 2014, as an AppleCare Team Lead from June 16, 2014 through July 26, 2015, and as an AppleCare Supervisor from July 27, 2015 through November 15, 2015.

5.      According to a review of Kelly's records, Erica Ramsey was employed by Kelly as an AppleCare Tier 1 Advisor from August 12, 2015 through November 11, 2015.

6.      According to a review of Kelly's records, Robert Sabot was employed by Kelly as an AOS Customer Service Representative from August 18, 2014 through May 10, 2015, and was employed by Kelly as a Customer Director from May 11, 2015 through November 8, 2015.

7.      According to a review of Kelly's records, Duane Truax was employed by Kelly as an AppleCare Tier 1 Advisor from November 8, 2010 through August 23, 2011, and as an AppleCare Tier 2 Advisor from January 2, 2013 through June 16, 2013.

8.      According to a review of Kelly's records, Nhadia Montreuil was employed by Kelly as an AppleCare Tier 1 Advisor from June 2, 2015 through July 24, 2015, and was employed by Kelly as an AppleCare Tier 2 Advisor from July 26, 2015 to the present.

9.      According to a review of Kelly's records, Tressie Rhymer was employed by Kelly as an AOS Customer Service Representative from September 1, 2013 through November 8, 2015.

10.     According to a review of Kelly's records, Heather Costello was employed by Kelly as an AppleCare Tier 1 Advisor from January 2, 2013 through February 25, 2013, and was employed by Kelly as an AppleCare Tier 2 Advisor from February 25, 2013 through October 4, 2014.

11.     According to a review of Kelly's records, Amber Middlebrooks was employed by Kelly as an AOS Customer Service Representative from May 26, 2015 through November 7, 2015.

12.     According to a review of Kelly's records, Kenneth Thomas was employed by Kelly as an AppleCare Tier 1 Advisor from June 5, 2015 through August 7, 2015, and was employed by Kelly as an AppleCare Tier 2 Advisor from August 10, 2015 through January 17, 2016.

13.     According to a review of Kelly's records, Desiree Clay was employed by Kelly as an AOS Customer Service Representative from May 6, 2013 through May 29, 2013, and was employed by Kelly as an AppleCare Team Lead from May 30, 2013 to the present.

14.     According to a review of Kelly's records, Roshika Coleman was employed by Kelly as an AOS Customer Service Representative from June 1, 2015 through October 31, 2015.

15.     According to a review of Kelly's records, April Lambert was employed by Kelly as an AOS Customer Service Representative from July 10, 2015 through November 17, 2015.

16.     According to a review of Kelly's records, Brandon Papin was employed by Kelly as an IT SC Agent from December 16, 2014 through July 15, 2015.

17.     According to a review of Kelly's records, Ryan Burzycki was employed by Kelly as an IT SC Agent from November 11, 2014 through October 5, 2015.

18.     According to a review of Kelly's records, Cedric Williams was employed by Kelly as an AppleCare Tier 1 Advisor from April 20, 2015 through July 7, 2015, and was employed by Kelly as an AppleCare Tier 1 Chat Advisor from July 8, 2015 to the present.

19.     According to a review of Kelly's records, Lisa Nicklous was employed by Kelly as an AppleCare Tier 1 Advisor from March 25, 2015 through May 15, 2015, and was employed by Kelly as an AppleCare Tier 2 Advisor from May 18, 2015 to the present.

20.     According to a review of Kelly's records, Pamela Armistead was employed by Kelly as an AppleCare Team Lead from January 1, 2013 through October 16, 2014.

21.     According to a review of Kelly's records, Vanessa Winfield was employed by Kelly as an AppleCare Tier 1 Advisor from June 30, 2015 through July 21, 2015, and was employed by Kelly as an AppleCare Tier 2 Advisor from July 21, 2015 through December 9, 2015.

22.     According to a review of Kelly's records, Carissa Newman was employed by Kelly as an AppleCare Tier 1 Advisor from June 17, 2014 through February 18, 2015, and was employed by Kelly as an AppleCare Tier 1 Chat Advisor from February 19, 2015 to the present.

23.     According to a review of Kelly's records, Veronica Gardner was employed by Kelly as an AppleCare Tier 1 Advisor from May 28, 2015 through July 1, 2015, and was employed by Kelly as an AppleCare Tier 1 Chat Advisor from July 2, 2015 through February 27, 2016.

24.     Putting aside the positions held by Mr. Gaffers and current Opt-Ins, other customer-facing, home-based positions within Kelly include AppleCare Tier 2 Chat Advisor, AppleCare Tier 1 CPU/Mac+ Advisor, AppleCare Tier 1 CPU/Mac+ Chat Advisor, and AppleCare Tier 2 CPU/Mac+ Advisor, and AppleCare Tier 2 CPU/Mac+ Chat Advisor.  These AppleCare Tier 2 Chat Advisor, AppleCare Tier 1 CPU/Mac+ Advisor, AppleCare Tier 1 CPU/Mac+ Chat Advisor, and AppleCare Tier 2 CPU/Mac+ Advisor, and AppleCare Tier 2 CPU/Mac+ Chat Advisor positions are non-exempt.

25.     AppleCare Tier 1 Advisors are responsible for handling technical-support questions for Apple customers and partners regarding Apple devices.

4

26.    AppleCare Tier 1 Chat Advisors perform the same function as AppleCare Tier 1 Advisors but do so via chat programs rather than the telephone.

27.    AppleCare Tier 2 Advisors are responsible for answering questions for Apple customers as well as assisting other Apple Advisors. The Tier 2 iPhone Carrier Advisors are responsible for answering questions for telephone carrier Advisors and escalating unresolved issues when necessary.

28.    AppleCare Tier 2 Chat Advisors perform the same function as AppleCare Tier 2 Advisors but do so via chat programs rather than the telephone.

29.    AppleCare Tier 1 CPU/Mac+ Advisors are responsible for handling technical-support questions for Apple customers and partners. Mac+ Advisors are expected to retain their Tier 1 iOS knowledge, as they will be primary in the Mac+ queue, but will still assist overflow iOS customers as necessary.

30.    AppleCare Tier 1 CPU/Mac+ Chat Advisors perform the same function as AppleCare Tier 1 CPU/Mac+ Advisors but do so via chat programs rather than the telephone.

31.    AppleCare Tier 2 CPU/Mac+ Advisors are responsible for handling technical-support questions for Apple customers and partners. Mac+ advisors are expected to retain their Tier 1 iOS knowledge, as they will be primary in the Mac+ queue, but will still assist overflow iOS customers as necessary, and will become dual trained to assist with T2 Mac and T2 iOS calls.

32.    AppleCare Tier 2 CPU/Mac+ Chat Advisors perform the same function as AppleCare Tier 2 CPU/Mac+ Advisors but do so via chat programs rather than the telephone.

33.    AOS Customer Service Representatives are responsible for assisting Apple's online store customers with placing orders, answering product questions, making changes to existing orders, answering any order questions as well as troubleshooting invoice questions.

34.     AppleCare Team Leads lead a team of Advisors and assist Tier I, Tier II and Customer Director Advisors in resolving customer issues. AppleCare Team Leads have interactions with customers on escalated issues, and escalate issues to Management as necessary.  AppleCare Team Leads are exempt.

35.     All AppleCare and AOS Advisors are provided a computer by Kelly.

36.     IT SC Agents provide second-level IT support to customers in business environments. Most of this work is Windows-based.  IT SC Agents provided their own technical support.  IT SC Agents used their own computer.

37.     According to a review of Kelly's records, more than 6,000 Kelly employees working in 48 states held the positions mentioned in ¶¶ 3 – 24 in the three years prior to the filing of Mr. Gaffers' Complaint.

38.     According to a review of Kelly's records, Kelly does not employ Mr. Gaffers, nor any other individual, as a "Home Based Customer Care Agent."  Kelly has never employed any individual as a "Home Based Customer Care Agent."

39.     Kelly employees who work on the same customer account as Mr. Gaffers, and who, like Mr. Gaffers are involved with providing technical support for the customer's users' devices, use some of the following software and web-based applications:

       a.  VPN

       b.  Safari

       c.  AppleConnect

       d.  iDesk

       e.  iLog

       f.  MonsterBoard

    g.  Pipkins

    h.  GBI Portal

    i.  GCRM

    j.  MZ Support Tool

    k.  Apple.Com

    l.  Bomgar

    m. Safe-View

    n.  Jabber

    o.  PeopleNet

    p.  Crubacca

    q.  Salesforce (through 12/31/15)

    r.  Outlook Email

40.    Advisors on the same customer account that Mr. Gaffers worked on, but who, unlike Mr. Gaffers, support the customer's online store assisting the customer's users with purchases, use some of the following software and web-based applications:

    a.  VPN

    b.  ApplePedia

    c.  Soft Phone

    d.  Toolbox

    e.  iSell

    f.  PeopleNet

    g.  SharePoint

    h.  Apple.com

     i.  Outlook Email

     j.  Pipkins

     k.  Citizens One

     l.  Barclay

41.     Advisors on the same customer account that Mr. Gaffers worked on, but who, unlike Mr. Gaffers, support the customer's online store assisting the customer's users with purchases, do not use or have access to iDesk or iLog.  Such Advisors represent more than 16% of the individuals mentioned in ¶ 37 of my Declaration. ¶

42.     IT SC Agents do not use or have access to iLog.

43.     Kelly employees who work for the same customer as Mr. Gaffers use equipment provided by Kelly in performing their work.  In contrast, IT SC Agents use their own devices.

44.     Kelly's policies required all employees who held the positions mentioned in ¶¶ 3 – 24 to submit their work time to Kelly Web Time on a weekly basis.

45.     Kelly's policies required all employees who held the positions mentioned in ¶¶ 3 – 24 to record their boot up and shut down time as time worked.

46.     Kelly required all employees who fell under the AppleCare umbrella to review a report showing the time they were logged into programs called iDesk and iLog before submitting their time.

47.     Kelly required AOS Customer Service Representatives to review a report showing the time they were logged into a program called Softphone before submitting their time.

48.     Kelly did not require IT SC Agents to review any report showing the amount of time they were logged into programs before submitting time.

49.      According to a review of Kelly's records, in 15 of the 24 workweeks Duane Truax worked for Kelly, Mr. Truax worked fewer than 38 hours.

50.      According to a review of Kelly's records, in 7 of the 15 weeks Erica Ramsey worked for Kelly, Ms. Ramsey worked fewer than 38 hours.

51.      According to a review of Kelly's records, in 33 of the 39 weeks Cedric Williams worked for Kelly, Mr. Williams worked fewer than 38 hours.

52.      According to a review of Kelly's records, in 12 of the 21 weeks Vanessa Winfield worked for Kelly, Ms. Winfield worked fewer than 38 hours.

53.      Attached as Exhibit 1 to my Declaration is a true and correct copy of the Kelly Employee Handbook provided to Mr. Gaffers on June 6, 2014, along with an acknowledgement from Mr. Gaffers that he received and reviewed the Handbook.

54.      Attached as Exhibit 2 to my Declaration is a true and correct copy of the Kelly Employee Handbook provided to Roshika Coleman on July 31, 2014, along with an acknowledgement from Ms. Coleman that she received and reviewed the Handbook.

55.      Attached as Exhibit 3 to my Declaration is a true and correct copy of the Kelly Services Handbook Addendum provided to Mr. Gaffers on June 6, 2014, along with an acknowledgement from Mr. Gaffers that he received and reviewed the Addendum.

56.      Attached as Exhibit 4 to my Declaration is a true and correct copy of the Kelly Services Handbook Addendum provided to Amber Middlebrooks on December 5, 2014, along with an acknowledgement from Ms. Middlebrooks that she received and reviewed the Addendum.

57.      Attached as Exhibit 5 to my Declaration is a true and correct copy of the arbitration agreement form signed by Plaintiff Veronica Gardner that is stored in Kelly's electronic data management system.

I declare under penalty of perjury under the laws of the State of Michigan that the foregoing is true and correct.  Executed on April 22, 2016 in Troy, Michigan.

 DATED: April 22, 2016

By: _____
        Melissa Turansky