UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**JONATHAN GAFFERS,** individually, and on
behalf of others similarly situated,

        Plaintiffs,

Case No. 16-10128

vs.

Hon. David M. Lawson

**KELLY SERVICES, INC.**,
a Michigan corporation

        Defendant.

---

| | |
|---|---|
| SEYFARTH SHAW, LLP<br>BY:   Gerald L. Maatman, Jr.<br>***Attorney for Defendant***<br>131 S. Dearborn Street<br>Suite 2400<br>Chicago, IL 60603<br>312-460-5000<br>gmaatman@seyfarth.com | KIENBAUM OPPERWALL HARDY &<br>PELTON, P.L.C.<br>BY:  William B. Forrest III<br>***Attorney for Defendant***<br>280 North Old Woodward Avenue, Suite<br>400<br>Birmingham, Michigan 48009<br>Office:  248-645-0000<br>Fax:  248-723-1110<br>wforrest@kohp.com |

---

**DEFENDANT KELLY SERVICES, INC.'S RENEWED MOTION TO COMPEL
ARBITRATION AND TO PARTIALLY DISMISS THE COMPLAINT
AND STAY LITIGATION PENDING ARBITRATION**

Defendant Kelly Services, Inc. ("Kelly") hereby moves this Honorable Court, pursuant to

the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, for an order compelling the Arbitration

Plaintiffs to arbitrate the claims asserted in the Complaint on an individual, bilateral basis, and to

set this Motion for hearing on August 4, 2016.  In support of this Motion, Kelly states as follows:

1. On February 29, 2016, Kelly filed a Motion To Compel Arbitration And To Partially Dismiss The Complaint And Stay Litigation Pending Arbitration ("Motion To Compel"). (ECF No. 25.)

2. On March 21, 2016, Plaintiff filed a Response In Opposition to Kelly's Motion To Compel. (ECF No. 34.)

3. On March 31, 2016, Kelly filed a Reply In Support Of Its Motion To Compel. (ECF No. 48.)

4. On March 4, 2016, the Court set the Motion To Compel for hearing on June 2, 2016 at 11 AM. (ECF No. 29.)

5. At the hearing on June 2, 2016, the Court stated that it was not prepared to address Kelly's Motion To Compel and suggested Kelly re-file the Motion To Compel so that it could be considered.

6. As suggested by the Court, Kelly renews it Motion To Compel and is refiling its Memorandum In Support Of Its Motion To Compel with this Renewed Motion To Compel Arbitration And Partially Dismiss The Complaint And Stay Litigation Pending Arbitration.

7. Kelly's Renewed Motion To Compel Arbitration And Partially Dismiss The Complaint And Stay Litigation Pending Arbitration is fully briefed. (*See* ¶¶ 1-3, 6, *supra*.)

8. A hearing on Plaintiff's Pre-Discovery Motion For Conditional Class Certification And Court Supervised Notice Pursuant To 29 U.S.C. § 216(b) is scheduled for August 4, 2016 at 3 PM. (ECF No. 46.)

WHEREFORE, for the foregoing reasons and the reasons explained in Kelly's concurrently-filed brief, the Court should (1) issue an order stating that Kelly's Renewed Motion To Compel Arbitration And Partially Dismiss The Complaint And Stay Litigation Pending Arbitration is fully briefed; (2) set Kelly's Renewed Motion To Compel Arbitration And Partially

Dismiss The Complaint And Stay Litigation Pending Arbitration for hearing on August 4, 2016,

so that it can be heard in conjunction with Plaintiff's Pre-Discovery Motion For Conditional

Class Certification And Court Supervised Notice Pursuant To 29 U.S.C. § 216(b); (3) submit the

Arbitration Plaintiffs' claims to arbitration; (4) order that the Arbitration Plaintiffs' claims be

arbitrated on an individual, bilateral basis; (5) dismiss the Complaint as to the Arbitration

Plaintiffs; and (6) stay all current proceedings pending the outcome of the arbitrations; or for any

further relief deemed just.

DATED:  June 6, 2016                                    Respectfully submitted,

                                                        KELLY SERVICES, INC.

Gerald L. Maatman, Jr., IL No. 6181016          By:     *s/ Gerald L. Maatman, Jr.*
(*gmaatman@seyfarth.com*)                                Gerald L. Maatman, Jr.
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603
Phone: 312-460-5000
Fax:    312-460-7000


William B. Forrest III
(*wforrest@kohp.com*)
Kienbaum Opperwall Hardy & Pelton, P.L.C.
280 North Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
Phone:  248-645-0000
Fax:  248-723-1110

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing Defendant Kelly Services, Inc.'s RENEWED MOTION TO COMPEL ARBITRATION AND TO PARTIALLY DISMISS THE COMPLAINT AND STAY LITIGATION PENDING ARBITRATION on the following through the Court's electronic case filing system on this 6th day of June 2016:

> Jason J. Thompson
> Kevin J. Stoops
> Jesse L. Young
> Sommers Schwartz, P.C.
> One Towne Square
> Suite 1700
> Southfield, Michigan 48076
> 248-355-0300
> jthompson@sommerspc.com
> kstoops@sommerspc.com
> jyoung@sommerspc.com

s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

**JONATHAN GAFFERS,** individually, and on
behalf of others similarly situated,

       Plaintiffs,

                                     Case No. 16-10128

vs.

                                     Hon. David M. Lawson

**KELLY SERVICES, INC.,**
a Michigan corporation

       Defendant.

---

| | |
|---|---|
| SEYFARTH SHAW, LLP<br>BY:   Gerald L. Maatman, Jr.<br>***Attorney for Defendant***<br>131 S. Dearborn Street<br>Suite 2400<br>Chicago, IL 60603<br>312-460-5000<br>gmaatman@seyfarth.com | KIENBAUM OPPERWALL HARDY &<br>PELTON, P.L.C.<br>BY:  William B. Forrest III<br>***Attorney for Defendant***<br>280 North Old Woodward Avenue, Suite 400<br>Birmingham, Michigan 48009<br>Office:  248-645-0000<br>Fax:  248-723-1110<br>wforrest@kohp.com |

---

**DEFENDANT KELLY SERVICES, INC.'S BRIEF IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TO PARTIALLY DISMISS THE COMPLAINT
<u>AND STAY LITIGATION PENDING ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

PROCEDURAL HISTORY ................................................................................. 3

FACTUAL BACKGROUND ............................................................................... 4

    A.    The Arbitration Plaintiffs Entered Into An Arbitration Agreement With Kelly When They Applied For Employment ................................................ 4

    B.    The Arbitration Agreement Covers All Claims "Relating To" Plaintiffs' Employment ........................................................................................... 5

    C.    Kelly Requested That Arbitration Plaintiffs Stipulate To Arbitration Of Their Claims .......................................................................................... 6

LEGAL STANDARDS ....................................................................................... 8

ARGUMENT ....................................................................................................... 9

I.    THE ARBITRATION PLAINTIFFS MUST BE COMPELLED TO ARBITRATE THEIR CLAIMS AGAINST KELLY ......................................... 9

    A.    The FAA Governs The Arbitration Agreement ................................... 10

        1.    A Valid Arbitration Agreement Exists ...................................... 11

        2.    The Arbitration Agreement Encompasses The Dispute At Issue In The Complaint .................................................................... 12

        3.    Congress Intended FLSA Claims To Be Arbitrable ................. 12

    B.    No Grounds Exist For Revoking The Arbitration Agreement To Which The Parties Agreed ............................................................................. 13

        1.    The Arbitration Agreement Is Not Procedurally Unconscionable Under Michigan Law ............................................................. 14

        2.    The Arbitration Agreement is Not Substantively Unconscionable Under Michigan Law ............................................................. 15

        3.    The Arbitration Agreement's Class Waiver Is Enforceable .... 16

II.    THE COURT SHOULD DISMISS THE COMPLAINT AS TO THE ARBITRATION PLAINTIFFS AND STAY THE REMAINDER OF THE LITIGATION PENDING ARBITRATION .................................................. 20

A.      The Court Should Dismiss the Arbitration Plaintiffs' Claims ............................ 21

B.      The Court Should Stay The Remaining Claims Pending Arbitration Of
        The Arbitration Plaintiffs' Claims ...................................................................... 21

CONCLUSION ..................................................................................................................... 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Labor Ready, Inc.*,
  303 F.3d 496 (4th Cir. 2002) ...............................................................16, 17, 19, 20

*Adler v. Dell, Inc.*,
  No. 08-13170, 2008 WL 5351042 (E.D. Mich. Dec. 18, 2008) ................................13, 14, 15

*Alixpartners, LLP v. Brewington*,
  No. 14-14942, 2015 WL 8538089 (E.D. Mich. Dec. 10, 2015) ................................9

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)................................................................................10

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013).............................................................................17

*Andersons, Inc. v. Horton Farms, Inc.*,
  166 F.3d 308 (6th Cir. 1998) ...................................................................14, 15

*Aracri v. Dillard's, Inc.*,
  No. 1:10-CV-253, 2011 WL 1388613 (S.D. Ohio March 29, 2011).....................................21

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).............................................................................17, 18

*Caley v. Gulfstream Aerospace Corp.*,
  428 F.3d 1359 (11th Cir. 2005) ...............................................................16, 20

*Carter v. Countrywide Credit Indus., Inc.*,
  362 F.3d 294 (5th Cir. 2004) ...................................................................16, 17, 19

*Compucredit Corp v. Greenwood*,
  132 S. Ct. 665 (2012)...............................................................................9

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985)..................................................................................8

*DeOrnellas v. Aspen Square Management, Inc.*,
  295 F. Supp. 2d 753 (E.D. Mich. 2003)................................................................8

*Feamster v. Compucom Systems, Inc.*,
  15-CV-564 (W.D. Va. Feb. 19, 2016) ................................................................19

iii

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ......................................................................................8, 10, 17

*Green v. Ameritech Corp.*,
  200 F.3d 967 (6th Cir. 2000) ...............................................................................21

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
  350 F.3d 568 (6th Cir. 2003) .................................................................................8

*Killion v. KeHE Distributors, LLC*,
  761 F.3d 574 (6th Cir. 2014) ..........................................................................18, 19

*Martyn v. J.W. Korth & Co.*,
  No. 1:11-CV-407, 2011 WL 2144618 (W.D. Mich. June 1, 2011) ........................9, 10, 11, 13

*Maxwell v. McKinley Corp.*,
  No. 11-11676, 2011 WL 5433977 (E.D. Mich. Nov. 9, 2011) ..........................14, 15

*McKinstry v. Valley Obstetrics–Gynecology Clinic*,
  405 N.W.2d 88 (Mich. 1987) ................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ..............................................................................................8, 20

*Owen v. Bristol Care, Inc.*,
  702 F.3d 1050 (8th Cir. 2013) ..............................................................................19

*Perry v. Thomas*,
  482 U.S. 483 (1987) .............................................................................................20

*Powell v. Sparrow Hospital*,
  No. 1:10-CV-206, 2010 WL 2901875 (W.D. Mich. July 23, 2010) .....................14

*Ramirez v. Bridgestone Retail Operations, LLC*,
  No. 12-14480, 2013 WL 1507221 (E.D. Mich. April 12, 2013) ...........................21

*Reed Elsevier, Inc. v. Crockett*,
  734 F.3d 594 (6th Cir. 2013) ..............................................................................8, 9

*Rembert v. Ryan's Family Steak Houses, Inc.*,
  235 Mich. App. 118 (Mich. Ct. App. 1999) .........................................................14

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ...............................................................................................13

*Southerland v. Corporate Transit of America*,
  No. 13-14462, 2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) ......................12, 21

*Stacy v. H & R Block Tax Services, Inc.*,
  No. 07-13327, 2008 WL 321300 (E.D. Mich. Feb. 4, 2008)...................................22

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
  559 U.S. 6628 (2010) ..........................................................................................18

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ...............................................................................9

*Sutherland v. Ernst & Young LLP*,
  726 F.3d 290 (2d Cir. 2013)................................................................................19

*Sutton v. U.S. Small Business Administration*,
  92 Fed. Appx. 112 (6th Cir. 2003).......................................................................11

*Thomas v. Right Choice Staffing Group, LLC*,
  No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015) ................................8, 11, 12, 22

*Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*,
  474 F.3d 966 (7th Cir. 2007) ...............................................................................23

**Statutes**

9 U.S.C. § 2...........................................................................................................13

9 U.S.C. § 3......................................................................................................1, 8, 20, 21

9 U.S.C. § 4.............................................................................................................1, 2

29 U.S.C. §216(b) ...................................................................................... *passim*

**Other Authorities**

E.D, Mich. LR 7.1..................................................................................................4

Fed. R. Civ. P. 23 ..................................................................................................1

## ISSUES PRESENTED

1.      Should the Arbitration Plaintiffs be compelled to submit their claims to arbitration, in accordance with the parties' mutually agreed-upon Arbitration Agreement?

*Suggested Answer: Yes.*

2.      Does the Federal Arbitration Act require that the Arbitration Agreement signed by the Arbitration Plaintiffs be enforced as to all of the Arbitration Plaintiffs' claims against Kelly?

*Suggested Answer: Yes.*

3.      Do any Michigan state laws that are not impermissibly hostile to arbitration render the Arbitration Agreement signed by each Arbitration Plaintiff unenforceable?

*Suggested Answer: No.*

4.      Should the Arbitration Plaintiffs be compelled to submit their claims to arbitration on an individual, bilateral basis, in accordance with the parties' mutually agreed-upon Arbitration Agreement?

*Suggested Answer: Yes.*

5.      Should the Court dismiss the Complaint as to the Arbitration Plaintiffs?

*Suggested Answer: Yes.*

6.      Should this Court stay the current proceedings pending the outcome of arbitration, regardless of whether all claims as to Kelly are compelled to arbitration?

*Suggested Answer: Yes.*

# CONTROLLING/MOST APPROPRIATE AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Labor Ready, Inc.*,
   303 F.3d 496 (4th Cir. 2002) ...............................................................16, 17, 19, 20

*Adler v. Dell, Inc.*,
   No. 08-13170, 2008 WL 5351042 (E.D. Mich. Dec. 18, 2008) ..................................13, 14, 15

*Alixpartners, LLP v. Brewington*,
   No. 14-14942, 2015 WL 8538089 (E.D. Mich. Dec. 10, 2015) ..............................................9

*Andersons, Inc. v. Horton Farms, Inc.*,
   166 F.3d 308 (6th Cir. 1998) ...............................................................14, 15

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)...............................................................17, 18

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359 (11th Cir. 2005) ...............................................................16, 20

*Carter v. Countrywide Credit Indus., Inc.*,
   362 F.3d 294 (5th Cir. 2004) ...............................................................16, 17, 19

*Compucredit Corp v. Greenwood*,
   132 S. Ct. 665 (2012)...............................................................9

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985)...............................................................8

*DeOrnellas v. Aspen Square Management, Inc.*,
   295 F. Supp. 2d 753 (E.D. Mich. 2003) (Lawson, J.)...............................................................8

*Feamster v. Compucom Systems, Incorporated*,
   15-CV-564 (W.D. Va. Feb. 19, 2016) ...............................................................19

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)...............................................................8, 10, 17

*Green v. Ameritech Corp.*,
   200 F.3d 967 (6th Cir. 2000) ...............................................................21

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*,
   350 F.3d 568 (6th Cir. 2003) ...............................................................8

*Killion v. KeHE Distributors, LLC,*
    761 F.3d 574 (6th Cir. 2014) ....................................................................18, 19

*Martyn v. J.W. Korth & Co.,*
    No. 1:11-CV-407, 2011 WL 2144618 (W.D. Mich. June 1, 2011) ........................9, 10, 11, 13

*Maxwell v. McKinley Corp.,*
    No. 11-11676, 2011 WL 5433977 (E.D. Mich. Nov. 9, 2011) ........................................14, 15

*McKinstry v. Valley Obstetrics–Gynecology Clinic,*
    405 N.W.2d 88 (Mich. 1987) ..................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1 (1983) ....................................................................................................8, 20

*Owen v. Bristol Care, Inc.,*
    702 F.3d 1050 (8th Cir. 2013) ..............................................................................19

*Perry v. Thomas,*
    482 U.S. 483 (1987) ..............................................................................................20

*Reed Elsevier, Inc. v. Crockett,*
    734 F.3d 594 (6th Cir. 2013) ................................................................................8, 9

*Southerland v. Corporate Transit of America,*
    No. 13-14462, 2014 WL 4906891 (E.D. Mich. Sept. 30, 2014) ........................12, 21

*Stacy v. H & R Block Tax Services, Inc.,*
    No. 07-13327, 2008 WL 321300 (E.D. Mich. Feb. 4, 2008) ..............................22

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,*
    559 U.S. 662 (2010) ..............................................................................................18

*Stout v. J.D. Byrider,*
    228 F.3d 709 (6th Cir. 2000) ................................................................................9

*Sutton v. U.S. Small Business Administration,*
    92 Fed. Appx. 112 (6th Cir. 2003) ......................................................................11

*Thomas v. Right Choice Staffing Group, LLC,*
    No. 15-10055, 2015 WL 4078173 (E.D. Mich. July 6, 2015) ................8, 11, 12, 22

## PRELIMINARY STATEMENT

Defendant Kelly Services, Inc. ("Kelly") hereby moves this Honorable Court for an order compelling the Arbitration Plaintiffs to arbitrate the claims asserted in the Complaint on an individual, bilateral basis.  Kelly submits this memorandum of law in support of Kelly's Motion to Compel Arbitration and to Partially Dismiss the Complaint and Stay Litigation Pending Arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  A "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  *Id.* § 4.  A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration.  *Id.* § 3.

## INTRODUCTION

In this lawsuit, Plaintiff Jonathan Gaffers ("Plaintiff Gaffers") brings a putative collective action against Kelly under the Fair Labor Standards Act, alleging unpaid overtime for certain pre-shift and post-shift work, as well as unpaid overtime "in connection with technical issues." (Complaint, ECF No. 1 ¶ 4.)[1]  Notably, Plaintiff Gaffers recently brought virtually identical claims against his previous employer, Sitel Worldwide Corp., in the U.S. District Court for the Middle District of Tennessee.  Plaintiff Gaffers is represented Plaintiffs' counsel in this action in his lawsuit against Sitel, and the complaint against Sitel bears a striking resemblance to the operative Complaint here.  Moreover, both here and in the suit against Sitel, Plaintiff Gaffers filed a pre-discovery motion for conditional certification before properly serving the complaint. (ECF Nos. 7 & 12; *see also* Maatman Decl. ¶ 16, Ex. 10.)[2]  As in this case, in his suit against

---

[1] The Complaint also brought a claims for breach of contract on behalf of a putative nationwide Rule 23 class.  On February 18, 2016, the parties stipulated to Plaintiffs' voluntary dismissal of Plaintiffs' breach of contract claims. (ECF No. 21.)

[2] "Maatman Decl." refers to the Declaration of Gerald L. Maatman, Jr. filed concurrently herewith.

Sitel, Plaintiff Gaffers seeks conditional certification based on his declaration alone.  (ECF No. 7; *see also* Maatman Decl. ¶ 15, Ex. 9.)

Despite entering into a binding agreement to arbitrate **all** disputes related to their employment, individuals who signed valid and binding agreements (the "Arbitration Plaintiffs") subsequently joined the lawsuit against Kelly as Opt-In Plaintiffs.  The Arbitration Plaintiffs' valid and binding agreement to arbitrate covers their claims against Kelly, and so the Arbitration Plaintiffs must honor the parties' agreement to arbitrate.

After being served with the Complaint, Kelly demanded that Plaintiffs' counsel submit the claims of the Arbitration Plaintiffs to arbitration in accordance with the terms of the parties' valid, written arbitration agreement and to withdraw Plaintiff's Pre-Discovery Motion for Conditional Class [sic] Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. §216(b).  (ECF No. 7.)  Plaintiffs' counsel refused to arbitrate the Arbitration Plaintiffs' claims, and refused to withdraw the motion for conditional certification of a collective action.  Accordingly, pursuant to Section 4 of the FAA, Kelly seeks the Court's assistance in compelling the Arbitration Plaintiffs to honor the parties' agreement to arbitrate the disputes in this matter.

This issue before the Court is straightforward: the Arbitration Plaintiffs (and every other new Kelly employee hired since November 2014) were required to execute a binding agreement to arbitrate all employment-related claims against Kelly, on an individual, bilateral basis, yet now seek to avoid that agreement and/or to have it avoided on their behalf.  Under federal law, the Arbitration Agreement is enforceable without discovery, and no basis exists under Michigan law to revoke it.  Hence, the Court should grant the Motion and send all of the Arbitration Plaintiffs' claims to arbitration on an individual, bilateral basis.  Moreover, the Arbitration Plaintiffs' claims should be dismissed, and the Court should stay the remaining claims pending

completion of the Arbitration Plaintiffs' binding arbitrations.  In the alternative, the Court should stay any decision on conditional certification pending its decision on the present Motion.

## PROCEDURAL HISTORY

On January 14, 2016, Plaintiff Gaffers filed the operative Complaint, seeking relief "on behalf of himself and all other similarly situated [home-based customer care agents] to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled." (Complaint, ECF No. 1 ¶ 26.)  The Complaint seeks conditional certification of a putative collective action under Section 216(b) of the FLSA.  (Complaint, ECF No. 1 ¶ 60.) Since the filing of the Complaint, eighteen (18) Opt-In Plaintiffs have filed consents to "to join and act as a plaintiff," including at least five who joined the lawsuit before Plaintiffs moved for conditional certification.  (ECF Nos. 4, 5, 8, 9, 10, 14, 15, 16, 22.)[3]

However, as explained more fully below, since November 2014, all new Kelly employees were required to sign arbitration agreements in connection with their application for employment with Kelly.  (Hammond Decl. ¶¶ 3, 17–18.)[4]  Thus, fully half of the eighteen Opt-In Plaintiffs are bound by an identical Arbitration Agreement.  ("Arbitration Plaintiffs.")  The nine Arbitration Plaintiffs (and every other Kelly employee hired since November 2014) have affirmatively waived their right to resolution of their dispute in a judicial forum, and have affirmatively limited themselves to individual, bilateral resolution of their claims in arbitration.

---

[3] On January 27, 2016, Heather Costello, Amber Middlebrooks, Nhadia Montreuil, Robert Sabot and Kenneth Thomas opted in as Plaintiffs.  (*See* ECF No. 4).  On January 29, 2016, Erica Ramsey opted in as a Plaintiff.  (*See* ECF No. 5).  On February 2, 2016, Desiree Clay, Roshika Coleman and Margaret Key opted in as Plaintiffs (*See* ECF No. 8).  On February 3, 2016, April Lambert opted in as a Plaintiff.  (*See* ECF No. 9).  On February 4, 2016, Brandon Papin, Ryan Burzycki and Cedric Williams opted in as Plaintiffs.  (*See* ECF No. 10).  On February 9, 2016, Lisa Nicklous and Duane Truax opted in as Plaintiffs. (*See* ECF No. 14).  On February 11, 2016, Pamela Armistead and Vanessa Winfield opted in as Plaintiffs. (*See* ECF No. 16).  On February 19, 2016, Tressie Rhymer opted in as a Plaintiff.  (*See* ECF No. 22).
[4] "Hammond Decl." refers to the Declaration of Melissa Hammond filed concurrently herewith.

Between February 5, 2016 and February 16, 2016, counsel for Kelly and counsel for Plaintiffs exchanged correspondence regarding, *inter alia*, the arbitration agreements signed by the Arbitration Plaintiffs. (Maatman Decl. ¶¶ 3-8, Exs. 1-6.) On February 17, 2016, pursuant to E.D. Mich. LR 7.1 and this Court's Practice Guidelines, counsel for Kelly and counsel for Plaintiffs met and conferred telephonically regarding, *inter alia*, the arbitration agreements. (Maatman Decl. ¶ 9.) Counsel for Kelly sought Plaintiffs' concurrence regarding the relief requested herein. (*Id.* ¶ 10.) Plaintiffs' counsel would not agree to arbitrate the Arbitration Plaintiffs' claims unless Kelly agreed, in contravention of the arbitration agreements, to class-wide arbitration. (*Id.*) Likewise, Plaintiffs' counsel would not consent to a stay of the litigation pending arbitration. (*Id.* ¶ 11.) Thus, the parties were unable to agree. (*Id.*)

## FACTUAL BACKGROUND

### A.    The Arbitration Plaintiffs Entered Into An Arbitration Agreement With Kelly When They Applied For Employment

From late 2014 through mid-2015, the Arbitration Plaintiffs applied for employment with Kelly. As part of the application process, the Arbitration Plaintiffs completed an application form and a Dispute Resolution And Mutual Agreement To Binding Arbitration (the "Arbitration Agreement"). (Hammond Decl. Exs. A–I.)

- April Lambert (signed on July 2, 2015);
- Amber Middlebrooks (signed on December 5, 2014);
- Nhadia Montreuil (signed on May 7, 2015);
- Erica Ramsey (signed on July 14, 2015);
- Tressie Rhymer (signed on November 14, 2014);
- Kenneth Thomas (signed on May 5, 2015);
- Cedric Williams (signed on March 26, 2015);
- Lisa Nicklous (signed on March 4, 2015); and

4

- Vanessa Winfield (signed on June 12, 2015).

(Hammond Decl. ¶¶ 8–16, Exs. A–I.)[5]  Using their name and the last four digits of their Social Security Number, the Arbitration Plaintiffs electronically signed the Arbitration Agreement on the date indicated on their individual Arbitration Agreements.  (Hammond Decl. ¶¶ 5–7, 18; *see also*, *e.g.*, *id.* ¶ 9, Ex. A.)  Each Arbitration Plaintiff and every new Kelly employee hired since November 2014 signed the Arbitration Agreement.  (Hammond Decl. ¶¶ 9–17, Exs. A–I; *id.* ¶ 18.)  By executing the Arbitration Agreement, the Arbitration Plaintiffs and Kelly agreed "to use binding arbitration, instead of going to court, for any 'Covered Claims' that arise between [Plaintiff] and Kelly Services."  (*E.g.*, Hammond Decl. Ex. A at 1.)

**B.      The Arbitration Agreement Covers All Claims "Relating To" Plaintiff's Employment**

The Arbitration Agreement sets forth the claims and disputes covered by the Arbitration Agreement and also the process for resolving workplace problems.

> **2.  Claims Subject to Agreement.**  The "Covered Claims" under this Agreement shall include all common-law and statutory claims relating to my employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, gender, and any other protected status. **I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Kelly Services and I hereby waive the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**

(*E.g.*, Hammond Decl. Ex. B at 1 (emphasis in original).)[6]  Moreover, the Arbitration Agreement sets out the parties' mutual agreement to limit resolution of their dispute to individual, bilateral arbitration, as opposed to any collective or class proceeding.

---

[5] There are two versions of the Form e2442 Arbitration Agreement: (1) the 10/14 version, *see, e.g.*, Hammond Decl. ¶ 9, Ex. B (Amber Middlebrooks Arbitration Agreement); and (2) the R5/15 version, *see, e.g.*, *id.* ¶ 8, Ex. A (April Lambert Arbitration Agreement).  There have been no other versions of the Arbitration Agreement.  (*Id.* ¶ 8.)
[6] The 10/14 version of the Arbitration Agreement included "unfair competition" as one of the "Covered Claims." (*E.g.*, Hammond Decl. ¶ 9, Ex. B.)  The provisions regarding "Covered Claims" are otherwise identical.  (*Compare* Hammond Decl. ¶ 8, Ex. A *with* Hammond Decl. ¶ 9, Ex. B.)

**8.  Waiver of Class and Collective Claims.**  Both Kelly Services and I also agree that all claims subject to this agreement will be arbitrated only on an individual basis, and that both Kelly Services and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a claim on behalf of other individuals, and no arbitrator hearing any claim under this agreement may: (i) combine more than one individual's claim or claims into a single case; (ii) order, require, participate in or facilitate production of class-wide contact information or notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding.

(*E.g.*, Hammond Decl. Ex. A at 2.)[7]

Nonetheless, after entering into the Arbitration Agreement, the Arbitration Plaintiffs joined this lawsuit as Opt-In Plaintiffs.  The Complaint seeks relief under the FLSA, alleging that Kelly failed to fully compensate "home-based customer care agents" for certain overtime allegedly worked "at the beginning of each shift in connection with starting and logging into various computer programs and applications; during each shift in connection with technical issues; and subsequent to each shift in connection with shutting down and logging out of various computer programs and applications."  (Complaint, ECF No. 1 ¶ 4.)  This statutory claim directly relates to and arises out of the Arbitration Plaintiffs' employment relationship with Kelly.  As a result, there can be no dispute that the claim is covered by the parties' valid, written Arbitration Agreement.

**C.     Kelly Requested That Arbitration Plaintiffs Stipulate To Arbitration Of Their Claims**

On February 5, 2016, Kelly wrote to Plaintiffs' counsel regarding the Arbitration Plaintiffs' obligation to submit their claims against Kelly to arbitration, pursuant to the parties' valid, written Arbitration Agreement.  (Maatman Decl. ¶ 3, Ex. 1.)  Kelly sent Plaintiffs' counsel copies of the Arbitration Agreement signed by Amber Noreno Middlebrooks, Nhadia Montreuil, Erica Ramsey, and Kenneth Thomas.  (Maatman Decl. ¶ 4, Ex. 2.)  Kelly likewise explained that

---

[7] The "Waiver of Class and Collective Claims" provisions in the 10/14 version and R5/15 version of the Arbitration Agreement are identical.  (*Compare* Hammond Decl ¶ 8, Ex. A *with* Hammond Decl ¶ 9, Ex. B.)

"no putative class or collective action may include the Arbitration Plaintiffs," and sought a stipulation to stay the litigation pending arbitration in order to avoid the parties and this Court unnecessarily expending resources.  (Maatman Decl. ¶ 3, Ex. 1.)  On February 8, 2016, Plaintiffs' counsel indicated that because Mr. Gaffers did not himself sign an arbitration agreement, they would "not agree to stay the litigation."  (Maatman Decl. ¶ 5, Ex. 3.)  Curiously, despite having received copies of the Arbitration Agreement signed by four of the Arbitration Plaintiffs, Plaintiffs' counsel went on to suggest "*[i]f* any eventual opt-in plaintiffs signed valid arbitration agreements, it can be determined at a later time whether they should go to arbitration," but only after sending "notice to the proposed class."  (Maatman Decl. ¶ 5, Ex. 3 (emphasis added).)  On February 11, 2016, counsel for Kelly responded, explaining that the proposed Section 216(b) collective action "impermissibly includes" the Arbitration Plaintiffs, "employees: (1) who have affirmatively waived their right to resolution of their dispute in a judicial forum; and (2) who have affirmatively limited themselves to individual resolution of their claims."  (Maatman Decl. ¶ 6, Ex. 4.)  On February 12, 2016, Plaintiffs' counsel refused to discuss the issue further, explained they would not "not concur in a motion to compel arbitration," and erroneously suggested that Kelly's "underlying purpose is to prevent or delay putative class members from learning about this litigation." (Maatman Decl. ¶ 7, Ex. 5.)[8]  Kelly's counsel subsequently corrected the misstatement of Plaintiffs' counsel, explaining that the present motion would be "filed to enforce the contractual rights of Kelly and its employees, and to limit the dispute to the proper parties and the proper forum."  (Maatman Decl. ¶ 8, Ex. 6.)

---

[8] Further belying Plaintiffs' counsel's suggestion, <u>eighteen</u> individuals have already opted in as Plaintiffs, many before Kelly was even served with process.

## <u>LEGAL STANDARDS</u>

When deciding a motion to compel arbitration under the FAA, the Court has four tasks:

> (1) to determine whether the parties agreed to arbitrate; (2) to determine the scope of any agreement to arbitrate; (3) if federal statutory claims are asserted, to decide whether Congress intended those claims to be non-arbitrable; and (4) if the court finds some, but not all, claims subject to arbitration, to decide whether to stay the remainder of the proceedings pending arbitration.

*Thomas v. Right Choice Staffing Grp., LLC*, No. 15-10055, 2015 WL 4078173, at * 4 (E.D. Mich. July 6, 2015) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). The Federal Arbitration Act ("FAA") "requires a federal court to stay an action when an issue in the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party fails or refuses to comply with the provisions of an enforceable arbitration agreement." *DeOrnellas v. Aspen Square Mgmt., Inc.*, 295 F. Supp. 2d 753, 59 (E.D. Mich. 2003) (Lawson, J.) (citing 9 U.S.C. § 4). The Supreme Court has held that enforcement of an arbitration agreement is mandatory:

> By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Any doubts concerning the arbitrability of a claim must be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 572-73 (6th Cir. 2003). The party opposing arbitration bears the burden of establishing that the arbitration agreement is somehow invalid or unenforceable. *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Under controlling Sixth Circuit precedent, questions of class-wide arbitrability are "gateway" questions to be determined by this Court, rather than the arbitrator. *See Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013) (holding that "whether an arbitration

8

agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial

determination unless the parties clearly and unmistakably provide otherwise.'") (citing *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  "Gateway questions" – as compared to

"subsidiary questions" concerning "details" – "are fundamental to the manner in which the

parties will resolve their dispute." *Id.*  In *Reed Elsevier*, the Sixth Circuit determined that:

> [W]hether the parties arbitrate one claim or 1,000 in a single proceeding is no
> mere detail. Unlike the question whether, say, one party to an arbitration
> agreement has waived his claim against the other — which of course is a
> subsidiary question — the question whether the parties agreed to classwide
> arbitration is vastly more consequential than even the gateway question whether
> they agreed to arbitrate bilaterally. An incorrect answer in favor of classwide
> arbitration would "forc[e] parties to arbitrate" not merely a *single* "matter that
> they may well not have agreed to arbitrate[,]" but *thousands* of them.

*Id.* (emphasis added) (citing *Howsam*, 537 U.S. at 84); *see also Alixpartners, LLP v. Brewington*,

No. 14-CV-14942, 2015 WL 8538089, at *5 (E.D. Mich. Dec. 10, 2015) ("the Court finds that

*Reed Elsevier* dictates the outcome of this issue, and finds that the Court is the proper body to

determine class arbitrability of the parties' Agreement").

## ARGUMENT

## I.   THE ARBITRATION PLAINTIFFS MUST BE COMPELLED TO ARBITRATE THEIR CLAIMS AGAINST KELLY

The FAA establishes a strong congressional policy favoring arbitration agreements, and

requires courts to enforce agreements to arbitrate according to their terms.  *Compucredit Corp. v.*

*Greenwood*, 132 S. Ct. 665, 668-69 (2012).  This mandate requires that courts to first determine

that an arbitration agreement exists and, if so, whether it covers the dispute at issue.  *See, e.g.*,

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

> Under the Federal Arbitration Act, arbitration agreements are valid and
> enforceable, absent grounds at law or in equity for the revocation of the
> agreement. 9 U.S.C. § 2. Absent such grounds, this Court is required to order
> arbitration: "[b]y its terms, the Act leaves no place for the exercise of discretion
> by a district court, but instead mandates that district courts shall direct the parties

to proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Martyn v. J.W. Korth & Co.*, No. 1:11-CV-407, 2011 WL 2144618, at *2 (W.D. Mich. June 1, 2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).  The Court must begin from the presumption that the Arbitration Agreement is enforceable; hence, the party opposing arbitration bears the burden of establishing that the Arbitration Agreement is somehow invalid or unenforceable.  *See Gilmer*, 500 U.S. at 26 (noting the burden is on the non-movant to show that Congress intended to preclude waiver of a judicial forum)

Here, each of the Arbitration Plaintiffs and Kelly entered into an arbitration agreement, which neither the Arbitration Plaintiffs nor Plaintiff Gaffers can dispute.  As explained below, the plain language of the Arbitration Agreement demonstrates that the agreement encompasses the dispute at issue in the Complaint.

**A.      The FAA Governs The Arbitration Agreement**

The FAA governs all arbitration agreements "evidencing a transaction involving commerce."  The Supreme Court has interpreted this language broadly.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995) ("examining the statute's language, background, and structure, we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting'").  Thus, any transaction affecting commerce, such as an agreement governing disputes over an employment relationship, could be governed by the FAA.  Kelly is headquartered in Michigan.  Plaintiff Gaffers "is employed by Defendant as an HBCCA in Bradenton, Florida."  (Complaint, ECF No. 1 ¶ 10.)  Kelly "has a role in managing employment opportunities for more than one million workers around the globe," Complaint, ECF No. 1 ¶ 2, and the Arbitration Plaintiffs work or worked for Kelly in multiple states.  Therefore, the Arbitration Plaintiffs' applications for and employment with Kelly inherently affect commerce and the FAA governs the parties' agreement to arbitrate.

10

### 1.      A Valid Arbitration Agreement Exists

A valid arbitration agreement governing employment-related disputes exists between the

Arbitration Plaintiffs and Kelly.  Agreements to arbitrate employment-related issues, including

FLSA claims, are consistently upheld by federal courts, including courts in the Sixth Circuit.

Simply put, the Sixth Circuit "has concluded that FLSA claims are arbitrable." *Thomas v. Right*

*Choice Staffing Group, LLC*, No. 15-10055, 2015 WL 4078173, at * 4 (E.D. Mich. July 6, 2015)

(citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000)).  Further, under

Michigan law, parties are presumed to have read and understood contracts they have signed.

*See, e.g.*, *Sutton v. U.S. Small Bus. Admin.*, 92 Fed. Appx. 112, 125-26 (6th Cir. 2003)

("Michigan law 'presumes that one who signs a written agreement knows the nature of the

instrument so executed and understands its contents.'") (quoting *McKinstry v. Valley Obstetrics–*

*Gynecology Clinic*, 405 N.W.2d 88, 96 (Mich. 1987)).  Therefore, the Court must presume that

the Arbitration Plaintiffs knew and understood the terms of the Arbitration Agreement when they

signed it.  *Sutton*, 92 Fed. Appx. at 125-26.  Moreover, under both federal law and Michigan law,

electronic signatures may be used to effectively execute an arbitration agreement.  *See, e.g.*,

*Martyn*, 2011 WL 2144618, at *2 (citing 15 U.S.C. § 7001 & Mich. Comp. Laws § 450.837).

Here, the Arbitration Plaintiffs executed an agreement to arbitrate disputes related to their

employment with Kelly.  The Arbitration Plaintiffs accessed and electronically signed the

Arbitration Agreements on the dates indicated.  (Hammond Decl. Exs. A–I.)  By electronically

signing these Arbitration Agreements, the Arbitration Plaintiffs Plaintiff formally agreed to

arbitrate all claims related to their employment, and to do so on an individual, bilateral basis.  In

short, having been provided the opportunity to review and consider the Arbitration Agreement,

and having acknowledged and accepted this material term of their employment application, the

Arbitration Plaintiffs agreed to arbitrate all claims arising from his employment, and to forego

collective relief, including under Section 216(b) of the FLSA.  Neither the Arbitration Plaintiffs nor Plaintiff Gaffers can dispute the authenticity of this valid, signed agreement to arbitrate their claims.

### 2.    The Arbitration Agreement Encompasses The Dispute At Issue In The Complaint

With regard to the Court's second task, by its plain language, the Arbitration Agreement covers all employment-related disputes.  The Arbitration Agreement states that the Arbitration Plaintiffs agree "to use binding arbitration, instead of going to court, for any 'Covered Claims' that arise between me and Kelly Services."  (Hammond Decl. Ex. A at 1.)  The Complaint alleges precisely the types of claims encompassed by the Arbitration Agreement's definition of "Covered Claims," as it alleges claims for monetary relief on the basis of the Arbitration Plaintiffs' employment with Kelly.

Here, the Arbitration Plaintiffs' FLSA claims relate to their employment with Kelly.  The Complaint alleges that during the course of their employment, Kelly violated the FLSA by failing to pay overtime compensation allegedly owed to the Arbitration Plaintiffs.  Thus, the Arbitration Plaintiffs' claims relate to his or her employment relationship and are covered claims under the terms of the parties' Arbitration Agreement.  Accordingly, the Arbitration Plaintiffs' claims are covered by the parties' Arbitration Agreement and the Court must compel arbitration.

### 3.    Congress Intended FLSA Claims To Be Arbitrable

With regard to the Court's third task, determining "whether Congress intended those claims to be non-arbitrable," there is no dispute that FLSA claims are arbitrable.  "Plaintiffs bring one statutory claim pursuant to the FLSA.  FLSA claims are arbitrable." *Southerland v. Corp. Transit of Am.*, No. 13-14462, 2014 WL 4906891, at *4 (E.D. Mich. Sept. 30, 2014); *Thomas*, 2015 WL 4078173, at *4 ("The Sixth Circuit has concluded that FLSA claims are arbitrable.").

12

As demonstrated above, the Arbitration Agreement is valid and enforceable.  Kelly has not engaged in litigation of these claims beyond this Motion to Compel Arbitration.  Indeed, shortly after receipt of the Complaint, Kelly demanded that the Arbitration Plaintiffs submit their claims to arbitration pursuant to the parties' agreement to arbitrate, and sought to stay the litigation with regard to the other Plaintiffs pending arbitration.  Kelly has since maintained its position that arbitration of all the Arbitration Plaintiffs' claims as to Kelly *must* be submitted to arbitration, and that no proposed Section 216(b) collective action can include the Arbitration Plaintiffs.  (*See, e.g.*, Hammond Decl. Ex. A at 2 ("both Kelly Services and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding").)  As such, no argument exists that Kelly has somehow waived its right to arbitrate.

### B.  No Grounds Exist For Revoking The Arbitration Agreement To Which The Parties Agreed

Having established that an arbitration agreement exists between the parties and that it covers the Arbitration Plaintiffs' claims, the FAA requires enforcement of the parties' arbitration agreement, unless legal grounds exist for its revocation.  *See* 9 U.S.C. § 2; *Martyn*, 2011 WL 2144618, at *2.  An arbitration agreement may only be revoked under a generally applicable state law defense such as waiver or unconscionability.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010).  Here, however, no such contractual defense is available.  To determine whether a contract is unconscionable under Michigan law, courts use a two-pronged analysis.  *Adler v. Dell, Inc.*, No. 08-CV-13170, 2008 WL 5351042, at *9 (E.D. Mich. Dec. 18, 2008).  To prove unconscionability the party opposing enforcement of the agreement must show that the contract was *both* substantively and procedurally unconscionable.  *Id.*  Here, the agreement is neither procedurally nor substantively unconscionable.

13

**1.  The Arbitration Agreement Is Not Procedurally Unconscionable Under Michigan Law**

A contract is procedurally unconscionable when there is a lack of meaningful choice in the acceptance of the challenged provision.  "The test inquires:  '(1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?'"  *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 322 (6th Cir. 1998) (citing *Rehmann, Robson & Co. v. McMahan*, 187 Mich. App. 36, 466 N.W.2d 325, 329 (Mich. Ct. App. 1991).  The fact that the Arbitration Plaintiffs' "assent to the arbitration agreement may have been a prerequisite condition of [their] employment does not . . . invalidate the agreement." *Maxwell v. McKinley Corp.*, No. 11-11676, 2011 WL 5433977, at *2 (E.D. Mich. Nov. 9, 2011) (citing *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997 (6th Cir. 2009) (upholding a binding arbitration agreement which was a condition of employment)).  Rather, the Arbitration Plaintiffs would need to demonstrate that they had "no real choice but to enter the contract" – that is, the employment agreement with Kelly.  *See Adler*, 2008 WL 5351042, at *9; *Powell v. Sparrow Hosp.*, No. 1:10-CV-206, 2010 WL 2901875, at *3-4 (W.D. Mich. July 23, 2010) (upholding arbitration agreement "found in the Employment Agreement covering Plaintiff's fifth year of residency").

The Arbitration Plaintiffs cannot carry their burden of showing that the parties' otherwise valid agreement is unenforceable under Michigan's contract laws.  As a condition of employment, the Arbitration Plaintiffs each signed a contract agreeing to arbitrate all employment-related claims.  (Hammond Decl. Exs. A–I.)  Such agreements are valid and enforceable under Michigan law.  *See Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 130 (Mich. Ct. App. 1999) ("Michigan jurisprudence favors arbitration, and the employment context is no exception.").

14

The Arbitration Plaintiffs voluntarily applied for employment with Kelly.  They were under no compulsion to apply for or accept employment with Kelly, and had the opportunity to review the contents of the Arbitration Agreement; which they are presumed to have done by virtue of the fact that they electronically signed the agreement.  *McKinstry*, 405 N.W.2d at 96.  Under Michigan law, the Court must presume that the Arbitration Plaintiffs knew and understood the terms of the Arbitration Agreement when they completed it, because parties are presumed to have knowledge of contracts they have signed.  *Id.*  Thus, the Arbitration Plaintiffs  cannot meet their burden to show that the Arbitration Agreement was procedurally unconscionable.

### 2.  The Arbitration Agreement is Not Substantively Unconscionable Under Michigan Law

Even if this Court were to find that the Arbitration Agreement was procedurally unconscionable, Plaintiff's claims must still be compelled to arbitration.  An arbitration agreement will not be deemed unenforceable unless it is both substantively ***and*** procedurally unconscionable.  *Andersons, Inc.*, 166 F.3d at 322.  Substantive unconscionability asks: "is the challenged term substantively reasonable?"  *Id.*  "A 'term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.'"  *Adler*, 2008 WL 5351042, at *10 (citing *Clark v. Daimler-Chrysler Corp.*, 268 Mich. App. 138, 144, 706 N.W.2d 471 (Mich. Ct. App. 2005).  Here,

> [T]the terms of the agreement do not limit [Kelly's] liability or operate asymmetrically in [Kelly's] favor, but rather specifically bind both parties to arbitrate any present or future claims against each other.

*See Maxwell*, 2011 WL 5433977, at *3.  "The Sixth Circuit has previously found such terms tantamount to *prima facie* evidence of substantive fairness."  *Id.*

The Arbitration Agreement requires the rules of the American Arbitration Association will govern selection of the arbitrator.  (Hammond Decl. Ex. A at 2.)  Moreover, the Arbitration Agreement allows both parties to take depositions of individuals and expert witnesses, subpoena

15

witnesses to the arbitration, and engage in written discovery in accordance with the Federal

Rules of Civil Procedure.  (*Id.*)  The Arbitration Agreement also requires that the arbitrator's

award be in writing and that the arbitrator provide the reasons for the award.  (*Id.*)  The

Arbitration Agreement further provides that each party shall be responsible for its own attorneys'

fees and related litigation expenses, but specifies that Kelly is responsible for paying "all costs

uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator."

(*Id.*)

      The arbitrator may award attorneys' costs and fees as permitted by the statute under

which the claim arises.  (*Id.*)  This provision, in conjunction with Kelly's responsibility for any

costs unique to arbitration prevent any claim that the Arbitration Agreement unreasonably

imposes costs on the Arbitration Plaintiffs.  The Arbitration Agreement allows the arbitrator to

award all remedies allowed by statute; thus, all remedies that would otherwise be available in

court are available to Plaintiff.

### 3.    The Arbitration Agreement's Class Waiver Is Enforceable

      Plaintiffs are likely to argue that their inability to arbitrate on a class or collective basis

renders the Arbitration Agreement unenforceable or invalid.  This argument has been considered

and rejected by courts.  Indeed, courts throughout the country have repeatedly rejected plaintiffs'

attempts to invalidate arbitration provisions because they prohibit class or collective action

treatment of wage claims.  *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378

(11th Cir. 2005); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004);

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503-06 (4th Cir. 2002).

      In *Carter*, 362 F.3d at 296, for instance, plaintiffs filed suit against Countrywide on

behalf of themselves and others similarly situated in an attempt to recover overtime

compensation allegedly due under the FLSA.  Countrywide moved to compel arbitration under

an agreement nearly identical to the Arbitration Agreements Plaintiffs here signed.  *Id.*  In that case, plaintiffs argued that their arbitration agreements with defendant were invalid, in part, because the agreements deprived plaintiffs of their substantive right to proceed collectively under the FLSA.  *Id.* at 298.  The Fifth Circuit disagreed, noting that the Supreme Court in *Gilmer*, 500 U.S. at 32, rejected similar arguments concerning the Age Discrimination in Employment Act, which expressly adopts the FLSA's collective action mechanism.  *Carter*, 362 F.3d at 298-300.

Similarly, in *Adkins*, 303 F.3d at 503, the Fourth Circuit rejected plaintiff's complaints about his inability to bring FLSA claims as a collective action in arbitration, noting that the plaintiff could not point to any "suggestion in the text, legislative history, or purpose of the FLSA" demonstrating that Congress intended to confer a non-waivable right to pursue a class or collective action under that statute.  *Id.*  Plaintiffs' "inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum."  *Id.*  Moreover, as the Third Circuit has held, "simply because judicial remedies are part of a law does not mean that Congress meant to preclude parties from bargaining around their availability."  *Id.*  (citation omitted).

The law is straightforward regarding enforceability of collective action waivers.  A state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA.  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011).  Although the FAA preserves generally applicable state law contract defenses, state law rules that "stand as an obstacle to the accomplishment of the FAA's objectives" are not similarly preserved.  *AT&T Mobility LLC*, 563 U.S. at 343.  The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" and allows the parties to limit with

17

whom a party will arbitrate its disputes and to waive availability of class-wide arbitration.  *Id.* at 344-45

In *Stolt-Nielsen S.A. v. Animalfeeds International Corp.*, in particular, the Supreme Court held that a party may not be compelled to arbitrate on a class basis "unless there is a contractual basis for concluding that the party *agreed* to do so."  559 U.S. 662, 684 (2010) (emphasis in original).  Such consent cannot be casually inferred, given the extreme differences between individual, bilateral arbitration and class arbitration:  "An implicit agreement to authorize class-action arbitration [] is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate . . . because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator."  *Id.* at 685; *AT&T Mobility LLC*, 563 U.S. at 348 ("[C]lass arbitration, to the extent it is manufactured . . . rather than consensual, is inconsistent with the FAA.").

Here, the text of the Arbitration Agreement goes further, and specifically requires that "all claims subject to this Agreement will be arbitrated only on an individual basis."  (Hammond Decl. Ex. A at 2.)  Thus, arbitration must be compelled in accordance with the terms of the Arbitration Agreement.  Because the Arbitration Agreement is contractually sound and not unconscionable, the FAA requires that the Court compel individual arbitration in accordance with the terms of the Arbitration Agreement.

The Sixth Circuit has yet to address the precise issue of the enforceability of collective action waivers in the FLSA context.  However, the Sixth Circuit noted that "the Eleventh Circuit recently addressed the jurisprudence of the courts of appeals on collective-action waivers in the arbitration context," determining that every Circuit addressing the question has upheld the validity of collective action waivers in arbitration agreements.  *Killion v. KeHE Distributors,*

*LLC*, 761 F.3d 574, 591 (6th Cir. 2014) (citing *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1336 (11th Cir. 2014).); *see also Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296-97 & n. 6 (2d Cir. 2013) (holding that Section 216(b) collective actions are a waivable procedural mechanism); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) (joining "fellow circuits that have held that arbitration agreements containing class waivers are enforceable in claims brought under the FLSA"); *Carter*, 362 F.3d at 298 (rejecting the argument that the rejecting collective arbitration deprives plaintiffs "of substantive rights available under the FLSA"); *Adkins*, 303 F.3d at 503–07 (4th Cir. 2002) (upholding FLSA collective action waivers and noting that plaintiffs' arguments in opposition "amount[ed] to little more than an attempt to undermine repeated pronouncements by Congress and the Supreme Court that federal law incorporates a liberal policy favoring arbitration agreements").  Critically, the Sixth Circuit did not address the enforceability of collective action waivers in arbitration agreements in *Killion*, because no arbitration agreement was present there.  761 F.3d at 592.  However, as the Sixth Circuit noted, "all of the circuits to address this issue have concluded that § 16(b) does not provide for a non-waivable, substantive right to bring a collective action."  *Id.* at 591.

That collective action waivers are valid was recently decided in *Feamster v. Compucom Systems, Inc.*, No. 15-CV-564 (W.D. Va. Feb. 19, 2016) (ECF No. 55), a case in which the plaintiffs were represented by Plaintiffs' counsel in this action.  (Maatman Decl. ¶ 12, Ex. 7.)  In that case (in which the Complaint bears a striking resemblance to the operative Complaint here), the court found that the right to a collective action is waivable "even when the employment agreement does not contain a mandatory arbitration clause."  (*Id*. at 7.)  The court in *Feamster* further found that "as a matter of law . . . employees may waive their ability to participate in collective action litigation, as long as the individual employees retain the individual capacity to vindicate their rights."  (*Id*. at 9.)

In sum, the Arbitration Agreement shows that: (1) the parties entered into an arbitration agreement; (2) the Arbitration Plaintiffs' claims are covered by that agreement; and (3) the agreement's policy provisions are valid and enforceable, such that no grounds for revocation exist. Plaintiffs' inability to proceed with their FLSA claims on a collective basis does not render the arbitration agreement invalid or unenforceable. The Court, accordingly, should compel Plaintiffs to arbitrate their claims on an individual, bilateral basis consistent with the terms of the Arbitration Agreement. The Court is therefore required to enforce the parties' Arbitration Agreement and to compel arbitration of Plaintiff's claims against Kelly. *See Perry v. Thomas*, 482 U.S. 483, 490 (1987) (courts have duty to rigorously enforce arbitration agreements under FAA); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (doubt concerning the scope of arbitrable issues must be resolved in favor of arbitration).

## II. THE COURT SHOULD DISMISS THE COMPLAINT AS TO THE ARBITRATION PLAINTIFFS AND STAY THE REMAINDER OF THE LITIGATION PENDING ARBITRATION

The only remaining inquiry is the proper course of action with regard to the remaining claims against Kelly. This Court may retain jurisdiction of the lawsuit and issue a stay of the litigation pending arbitration of the parties' dispute. *See* 9 U.S.C. § 3 ("[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, [the court] shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); *Adkins*, 303 F.3d at 500 (4th Cir. 2001) (noting that a stay of litigation under § 3 is mandatory "where a valid arbitration agreement exists and the issues in a case fall within its purview"). Alternatively, this Court may compel arbitration and dismiss the lawsuit with prejudice. *Caley*, 428 F.3d at 1379 (11th Cir. 2005) (concluding in an FLSA lawsuit that "the district court properly granted defendants' motion to dismiss and to compel arbitration").

**A.     The Court Should Dismiss the Arbitration Plaintiffs' Claims**

When all of the issues raised in a district court must be submitted to arbitration, the "weight of authority clearly supports dismissal of the case." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)  Thus, when staying the case and retaining jurisdiction "would serve no purpose," dismissal is appropriate. *Southerland*, 2014 WL 4906891, at *4 ("The Sixth Circuit, like several other circuits, has authorized dismissal of actions where all claims are referable to arbitration and retaining jurisdiction would thus serve no purpose.") (citing cases); *Ramirez v. Bridgestone Retail Operations, LLC*, No. 12-CV-14480, 2013 WL 1507221, at * 5 (E.D. Mich. April 12, 2013) (dismissing litigation upon determining "that Plaintiff's claim against Defendant is referable to arbitration"); *Aracri v. Dillard's, Inc.*, No. 1:10-CV-253, 2011 WL 1388613, at *7 (S.D. Ohio Mar. 29, 2011) ("The Sixth Circuit has indicated that dismissal is appropriate where the issues raised are subject to arbitration.").

As explained above, all claims brought against Kelly by or on behalf of the Arbitration Plaintiffs must be submitted to arbitration.  With regard to the claims brought by or on behalf of the Arbitration Plaintiffs, nothing remains for the Court to do.  Therefore, as to those claims, dismissal is appropriate.

**B.     The Court Should Stay The Remaining Claims Pending Arbitration Of The Arbitration Plaintiffs' Claims**

With regard to the claims brought against Kelly by or on behalf of employees who did not sign arbitration agreements, including some of the Kelly employees hired prior to November 2014, the Court should stay the litigation.  As a preliminary matter, to the extent the litigation includes any claims by or on behalf of the Arbitration Plaintiffs, such inclusion violates the mandatory stay called for by 9 U.S.C. § 3.  Further, given Plaintiffs' refusal to remove individuals who signed the Arbitration Agreement from his proposed collective action and

willingness to file opt-in consents for such individuals, additional opt-ins subject to arbitration may attempt to join this litigation at various points in the future.

Moreover, "the Supreme Court has determined that '[i]n some cases . . . it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.'" *Thomas*, 2015 WL 4078173, at * 8 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n. 23.). Thus, district courts "have stayed the litigation of non-arbitrable claims pending the outcome of an arbitration." *Thomas*, 2015 WL 4078173, at * 8. For example, in *Stacy v. H & R Block Tax Services, Inc.*, No. 07-13327, 2008 WL 321300 (E.D. Mich. Feb. 4, 2008), two plaintiffs who had signed arbitration agreements brought a lawsuit against H & R Block, along with five plaintiffs who had not committed to arbitration. *Id.* at *1. In exercising its discretion to control its docket, the court stayed the litigation as to the non-arbitrating plaintiffs pending the completion of arbitration. *Id.*

As the court in *Thomas* explained, "one district judge in [the Sixth] Circuit held that 'where some claims are non-arbitrable, they can simultaneously proceed in [the district c]ourt only *if* they can be separated out; in other words, *if their resolution has no effect on the arbitrable issues*.'" 2015 WL 4078173 at * 8 (citing *DRS Precision Echo, Inc. v. Michigan Magnetics, Inc.*, No. 1:02-CV-161, 2003 WL 1141900, at *5 (W.D. Mich. Jan. 7, 2003) (emphasis in original)).

Here, the proposed FLSA collective impermissibly includes the Arbitration Plaintiffs, and Plaintiffs' counsel has refused to adjust the proposed Section 216(b) collective action definition to exclude the Arbitration Plaintiffs (and/or any other employees bound by the Arbitration Agreement with Kelly.) Thus, to the extent a stay is not mandatory, the issues concerning the Arbitration Plaintiffs and the remaining Plaintiffs cannot be separated out and cannot proceed

22

simultaneously.  Moreover, in determining whether to grant a discretionary stay, the "factors that bear on this inquiry include 'the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays.'" *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) (quoting *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001)).  To the extent Plaintiffs seek to prosecute a Section 216(b) collective action which on its face includes the Arbitration Plaintiffs, this Court must stay the litigation with regard to the non-arbitrating Plaintiffs, because failure to do so presents the obvious risk of inconsistent results, particularly to the extent that identical claims on behalf of the Arbitration Plaintiffs and new Kelly employees hired since November 2014 would proceed simultaneously in two different forums.  There would be no prejudice to the non-arbitrating Plaintiffs from such a stay, and any potential prejudice, stems directly from Plaintiff's and Arbitration Plaintiffs' steadfast insistence on a proposed collective action definition which impermissibly includes individuals who signed arbitration agreements.  Critically, to address the statute of limitations with regard to non-arbitrating Plaintiffs, on February 23, 2016 counsel for Kelly offered to discuss a potential tolling agreement with Plaintiffs' counsel.  (Maatman Decl. ¶ 13, Ex. 8, P. Wozniak Email (2/23/16) (" "if [the statute of limitations for putative FLSA collective members] is your only concern (as to the stay and as to discovery regarding Mr. Gaffers), I can discuss a potential tolling agreement with my client, but not until after we have a brief meet and confer on the issue.").)  Plaintiffs' counsel did not respond.  (Maatman Decl. ¶ 14.)

## CONCLUSION

For the foregoing reasons, Kelly respectfully requests that this Court grant Kelly's Motion to Compel Arbitration and to Partially Dismiss the Complaint and Stay Litigation Pending Arbitration.

23

DATED:  June 6, 2016                            Respectfully submitted,

                                                    KELLY SERVICES, INC.

Gerald L. Maatman, Jr., IL No. 6181016     By:____*s/ Gerald L. Maatman, Jr.*_____
(*gmaatman@seyfarth.com*)                          Gerald L. Maatman, Jr.
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603
Phone: 312-460-5000
Fax:    312-460-7000

William B. Forrest III
(*wforrest@kohp.com*)
Kienbaum Opperwall Hardy & Pelton, P.L.C.
280 North Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
Phone:  248-645-0000
Fax:  248-723-1110

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing Defendant Kelly Services, Inc.'s Brief in Support of its Motion to Compel Arbitration and to Partially Dismiss the Complaint and Stay Litigation Pending Arbitration on the following through the Court's electronic case filing system on this 6th day of June 2016:

Jason J. Thompson
Kevin J. Stoops
Jesse L. Young
Sommers Schwartz, P.C.
One Towne Square
Suite 1700
Southfield, Michigan 48076
248-355-0300
jthompson@sommerspc.com
kstoops@sommerspc.com
jyoung@sommerspc.com

s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.