UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN


**JONATHAN GAFFERS,** individually,
and on behalf of others similarly situated,

     Plaintiffs,

                                       Case No. 16-cv-10128

vs.

                                       Hon. David M. Lawson

**KELLY SERVICES, INC.,**
a Michigan corporation,

     Defendant.

_____


**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO PARTIALLY DISMISS THE COMPLAINT AND <u>STAY LITIGATION PENDING ARBITRATION</u>**

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES.................................................................. ii

I.      INTRODUCTION ...................................................................1

II.     PROCEDURAL POSTURE .......................................................2

III.    ARGUMENT............................................................................3

      A.    IN CASES INVOLVING ARBITRATION CLAUSES, COURTS OVERWHELMINGLY AUTHORIZE NOTICE BEFORE DECIDING WHETHER TO COMPEL ARBITRATION .................................................................3

      B.    DEFENDANT HAS NOT YET ESTABLISHED THAT ITS ARBITRATION AGREEMENT IS VALID OR ACTUALLY APPLIES TO ANYONE .....................................................8

            1.   DEFENDANT'S SHORTENING OF THE LIMITATIONS PERIOD IS PREJUDICIAL AND CONTRARY TO LAW ............................................9

            2.   CONFIDENTIALITY PROVISIONS ARE SO DISFAVORED IN FLSA CASES THAT EVEN DEFENDANT CONTEMPLATES ITS EXCLUSION ...........10

            3.   DEFENDANT'S ARBITRATION AGREEMENT PROHIBITS COLLECTIVE ACTION IN ANY FORUM ...............................................................10

            4.   THE APPLICABILITY OF DEFENDANT'S ARBITRATION AGREEMENT CANNOT BE DETERMINED WITHOUT DISCOVERY ............................14

IV.     CONCLUSION.......................................................................18

# INDEX OF AUTHORITIES

**Cases**

*Abdulina v. Eberl's Temp. Svcs.*, 2015 U.S. Dist. LEXIS 101808 (D. Colo. Aug. 4, 2015) ........................................................................................5, 15

*Albert M. Higley, Co. v. N/S Corp.*, 445 F.3d 861 (6th Cir. 2006).........................17

*Ali v. Sugarland Petroleum,* 2009 U.S. Dist. LEXIS 118829, 2009 WL 5173508 (S.D. Tex. December 22, 2009).............................................................6

*Ambrosia v. Cogent Communications, Inc.*, 2016 U.S. Dist. LEXIS 242 (N.D. Cal. Jan. 4, 2016)...........................................................................................6

*Barkley v. Pizza Hut of Am., Inc.*, 2014 U.S. Dist. LEXIS 110640, 2014 WL 3908197 (M.D. Fla. Aug. 11, 2014).............................................................8

*\*Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603 (6th Cir. 2013) ................9, 10

*Booker v. Robert Half Int'l Inc.*, 413 F.3d 77 (D.C. Cir. 2005) ..............................17

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)...........................................................................................................12

*Camacho v. Ess-a-Bagel, Inc.*, 2014 U.S. Dist. LEXIS 171649 (S.D.N.Y. Dec. 11, 2014) ..................................................................................14

*Chambers v. Groome Transportation of Alabama*, 41 F. Supp. 3d 1327 (M.D. Ala. 2014) ........................................................................................8, 9, 11

*D'Antuono v. C&G Groton, Inc.*, 2011 U.S. Dist. LEXIS 135402 (D. Conn. Nov. 23, 2011) .......................................................................................6

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010) ...........................14

*EEOC v. Waffle House, Inc.*, 534 U.S. 279, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002)...........................................................................................................18

*Feamster v. CompuCom Systems*, 2016 U.S. Dist. LEXIS 2015016 (W.D. Va. Feb. 19, 2016) ....................................................................................15

\* Controlling Authority

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920 (1995)..................................................................................................8, 12

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000).........15, 16

*Gordon v. TBC Retail Group, Inc.*, 2015 U.S. Dist. LEXIS 132490 (D.S.C. Sept. 30, 2015).................................................................................6, 15

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) ................................................................................11

*Guzman v. Three Amigos SJL, Inc.*, 117 F. Supp. 3d 516, 2015 U.S. Dist. LEXIS 99716 (S.D.N.Y. Jul. 30, 2015) ..........................................5, 15

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) ..................................4

*Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989).................................................4

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)............................................................................11

*In re Evanston Nw. Corp. Antitrust Litig.*, 2013 WL 6490152 (N.D. Ill. Dec. 10, 2013) ....................................................................................7

*Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643 (S.D.N.Y. 2011) .........................14

*Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014).....................5, 15

*Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1 (2006)..........................................13

*Leyva v. 35 Bar & Grill, LLC*, 2015 U.S. Dist. LEXIS 136509 (W.D. Tex. Sep. 22, 2015)....................................................................................6

*Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170 (C.D. Cal. 2012).............................13

*Lloyd v. J.P. Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 47383 (S.D.N.Y. April 1, 2014) ..............................................................................6

*Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x 529 (6th Cir. 2014) ..........................................12

*Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170 (S.D.N.Y. 2015)............12, 13

*Lusardi v. Xerox Corp.*, 99 F.R.D. 89 (D.N.J. 1983).................................................4

*Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007).....................................................................................................................4

*Monroe v. FTS USA, LLC*, __ F.3d __, 2016 U.S. App. LEXIS 3859 (6th Cir. Mar. 2, 2016) ..................................................................................................4

*Mooney v. Aramco Servs. Co*, 54 F.3d 1207 (5th Cir. 1995) .............................4

*NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807 (6th Cir. 2008).........................17

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ........................................13

*Pruiett v. W. End Rests., LLC*, 2011 U.S. Dist. LEXIS 131369 (M.D. Tenn. Nov. 14, 2011)...................................................................................................9

*Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013) ...............................11

*Romero v. La Revise Assoc's, LLC*, 968 F. Supp. 2d 639 (S.D.N.Y. 2013) ......................................................................................................................5

*Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561 (Ky. 2012) ................13

*Sealy v. Keiser Sch., Inc.*, 2011 U.S. Dist. LEXIS 152369, 2011 WL 7641238 (S.D. Fla. Nov. 8, 2011) .......................................................................6

*Simon v. Pfizer Inc.*, 398 F.3d 765 (6th Cir. 2005)..................................................17

*Smith v. Lowe's Cos.*, 2005 U.S. Dist. LEXIS 9763, 2005 WL 6742234 (S.D. Ohio May 11, 2005) ...............................................................................4, 17

*Snook v. Valley OB-GYN Clinic, P.C.*, 2014 U.S. Dist. LEXIS 177517 (E.D. Mich. Dec. 29, 2014) ...............................................................................14

*Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392 (D.N.J. 1988) .....................4

*Taylor v. Pittsburgh Mercy Health Sys.*, 2009 U.S. Dist. LEXIS 40080, 2009 WL 1324045 (W.D. Pa. May 11, 2009) ......................................................5

*Tenn. Coal Iron R.R. Co. v. Muscoda*, 321 U.S. 590 (1944)...................................4

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) .......................................................13

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ....................................17

*Whittington v. Taco Bell of America, Inc.*, 2011 U.S. Dist. LEXIS 55292
   (D. Col. May 10, 2011) ..........................................................................................7

*Williams v. Omainsky*, 2016 U.S. Dist. LEXIS 7419 (S.D. Ala. Jan. 21,
   2016) ......................................................................................................................5

*Wills v. Cellular Sales of Tenn., LLC*, 2014 U.S. Dist. LEXIS 114295
   (E.D. Tenn. Aug. 18, 2014) ...................................................................................13

*Wineman v. Durkee Lakes Hunting & Fishing Club, Inc.*, 352 F. Supp.
   2d 815 (E.D. Mich. 2005)...................................................................................9, 10

*Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) ...............................4

### Statutes

29 U.S.C. § 216(b) .................................................................................*passim*

29 U.S.C. § 255(a) ........................................................................................8

### Rules

Fed.R.Civ.P. 23 ...........................................................................................7

## I.   INTRODUCTION

Moving to compel arbitration is one thing, but asking the Court to stay this Fair Labor Standards Act ("FLSA") collective action and indefinitely postpone resolution of Plaintiff's Motion for Conditional Certification is quite another, especially when it is undisputed that many employees, including the Named Plaintiff, never signed arbitration agreements.  Even where arbitration is obvious, the majority of courts have ruled that early § 216(b) notice is still appropriate to alert employees of the possibility of a claim before their statute of limitations expires.  The need for immediate notice is especially strong in this case because: (1) Defendant has attempted to shorten the FLSA limitations period from two years or three years in the case of a willful violation, to a mere "300 days," and (2) Defendant is attempting to hide behind a confidentiality clause to prevent employees from learning of each other's claims.  These provisions are contrary to law and the Court should declare them invalid.

Additionally, Defendant has not yet proven the applicability of its arbitration agreement to anyone.  The Named Plaintiff and eleven of the twenty current opt-in Plaintiffs never signed arbitration agreements.  Of the employees who did sign arbitration agreements, some were new hires and some were existing employees who were forced to sign Defendant's agreement, without consideration, under threat of termination.  The applicability of Defendant's arbitration agreements

1

requires discovery and until notice goes out and the opt-in period is closed, engaging in discovery is premature.

After notice, and after these preliminary factual and legal issues have been resolved by the Court, Plaintiff will stipulate to the dismissal of anyone who signed a valid arbitration agreement. Accordingly, Defendant's Motion is premature and should be denied without prejudice.

## II.   PROCEDURAL POSTURE

This is an FLSA case brought to recover overtime wages for employees who worked for Defendant Kelly Services, Inc. as home-based telephone call center operators also known as home-based customer care agents ("HBCCAs"). The Complaint alleges that HBCCAs regularly worked more than 40 hours per week but were not paid for certain pre-shift computer log in activities, certain mid-shift technical break down periods, and certain post-shift shut down and log out procedures. As the U.S. Department of Labor explained in Fact Sheet #64, this kind of off-the-clock work is commonplace in the call center industry.

On January 29, 2016, Plaintiff filed his Motion for Pre-Discovery Conditional Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant 29 U.S.C. § 216(b) [Dkt. 4]. On February 29, 2016, Defendant filed three motions: (1) a Motion to Compel Arbitration and to Partially Dismiss the Complaint and Stay the Litigation Pending Arbitration [Dkt. 25] (the

"Arbitration Motion"), (2) a Motion to Dismiss the Complaint [Dkt. 26] (the "Motion to Dismiss"), and (3) a Motion to Stay Consideration of Plaintiff's Motion for Conditional Certification Until the Pleadings are Finalized, Limited Discovery is Taken, and Arbitrations are Completed [Dkt. 27] (the "Motion to Stay").[1]

So far, twenty opt-in Plaintiffs have joined this suit in addition to Mr. Gaffers, and according to Defendant, nine of the opt-ins signed Defendant's standard-form arbitration agreement (the "Arbitration Plaintiffs").

### III.   ARGUMENT

**A.   In Cases Involving Arbitration Clauses, Courts Overwhelmingly Authorize Notice Before Deciding Whether to Compel Arbitration**

As Plaintiff explained in his two prior briefs,[2] the FLSA is a remedial statute that authorizes notice to be sent to all similarly situated employees.  29 U.S.C. § 216(b); *Monroe v. FTS USA, LLC*, __ F.3d __, 2016 U.S. App. LEXIS 3859, *11 (6th Cir. Mar. 2, 2016) (*following Hoffman-LaRoche v. Sperling*, 493 U.S. 165,

---

[1] Defendant's first two Motions are dispositive motions.  Plaintiff filed his Response to the Motion to Stay on March 14, 2016 [Dkt. 32].

[2] *See* Plaintiffs' Motion To Reinstate April 14th Hearing Date On Plaintiffs' Conditional Certification Motion [Dkt. 31], and Plaintiff's Response To Defendant's Motion To Stay Consideration Of Plaintiff's Motion For Conditional Certification Until The Pleadings Are Finalized, Limited Discovery Is Taken, And Arbitrations Are Completed [Dkt. 32].

170 (1989)).[3]

> If courts refrain from facilitating notice to missing class members, the enforcement of [FLSA] remedies for violations which victimize a group of people will be limited only to those victims who are already known to their "champion," *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982), or who are fortunate enough to hear and heed "the vagaries of rumor and gossip," *Lusardi v. Xerox Corp.*, 99 F.R.D. 89, 93 (D.N.J. 1983), or who are courageous enough to recognize the wrong done them and sue on their own. The [FLSA] cannot tolerate the piecemeal remediation which would thereby result, at least in those instances where the discriminatory act has victimized a large number of people.

> *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 403 (D.N.J. 1988).

*See also Monroe*, 2016 U.S. App. LEXIS at *22 (*quoting Tenn. Coal Iron R.R. Co. v. Muscoda*, 321 U.S. 590, 597 (1944)) (courts must avoid the "narrow, grudging interpretation" of the FLSA that the Supreme Court warned against).

The issuance of early notice also "protects plaintiffs' claims from expiring under the statute of limitations." *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007); *Smith v. Lowe's Cos.*, No. 2:04-cv-774, 2005 U.S. Dist. LEXIS 9763, at *13-14, 2005 WL 6742234 (S.D. Ohio May 11, 2005). "[T]ime is of the essence for purposes of FLSA notice." *Taylor v. Pittsburgh*

---

[3] Although *Hoffman-LaRoche* is an Age Discrimination in Employment Act (ADEA) case, its analysis is applicable to FLSA cases because the ADEA explicitly incorporates the FLSA collective action provisions. *Mooney v. Aramco Servs. Co*, 54 F.3d 1207, 1212 (5th Cir. 1995); *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 n.15 (S.D.N.Y. 1997) ("[I]n *Hoffmann-La Roche*, the Supreme Court construed § 216(b) on its own terms, and its analysis applies with equal force to FLSA cases.").

*Mercy Health Sys.*, No. 09-cv-377, 2009 U.S. Dist. LEXIS 40080, at *2, 2009 WL 1324045 (W.D. Pa. May 11, 2009).

Defendant ignores these realities, and instead recites the policies of the Federal Arbitration Act ("FAA"). However, those policies do not trump the FLSA. *See Killion v. KeHE Distributors, LLC*, 761 F.3d 574 (6th Cir. 2014). Indeed, in cases like this where some employees are bound by arbitration agreements and some are not, courts overwhelmingly authorize notice and defer resolution of the arbitration questions until at least the close of the opt-in period, if not the close of discovery. *See, for example*:

- *Guzman v. Three Amigos SJL, Inc.*, 117 F. Supp. 3d 516, 2015 U.S. Dist. LEXIS 99716 *23 (S.D.N.Y. Jul. 30, 2015) ("Nor does the fact that some of the contracts have arbitration provisions, simplified or not, create any differences between plaintiffs and other entertainers with respect to Defendants violated the FLSA. Courts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits based determination") (collecting cases).

- *Romero v. La Revise Assoc's, LLC*, 968 F. Supp. 2d 639, 646-47 (S.D.N.Y. 2013) ("the existence of differences between potential plaintiffs as to the arbitrability of their claims should not act as a bar to the collective action analysis") (collecting cases).

- *Williams v. Omainsky*, 2016 U.S. Dist. LEXIS 7419 *25 (S.D. Ala. Jan. 21, 2016) ("Defendant's position (for which they cite no direct authorities) is undermined by considerable case law to the contrary").

- *Abdulina v. Eberl's Temp. Svcs.*, 2015 U.S. Dist. LEXIS 101808 *8 (D. Colo. Aug. 4, 2015) (authorizing notice to all similarly situated employees holding that  employees "who executed an arbitration agreement may not be appropriate class members but that argument is appropriately raised at the second stage of the certification analysis").

5

- *Leyva v. 35 Bar & Grill, LLC*, 2015 U.S. Dist. LEXIS 136509 *18-19 (W.D. Tex. Sep. 22, 2015) ("the Court disagrees with defendants that the notice should be amended to reflect that potential class members might be excluded from the class at a future time if they signed an arbitration provision as this information might result in overly broad self-selection by potential class members at this stage of the lawsuit").

- *D'Antuono v. C&G Groton, Inc.*, 2011 U.S. Dist. LEXIS 135402 *11-12 (D. Conn. Nov. 23, 2011) ("the existence of other exotic dancer's arbitration agreements is [] immaterial to the question of [conditional] certification").

- *Lloyd v. J.P. Morgan Chase & Co.*, 2014 U.S. Dist. LEXIS 47383, *17 (S.D.N.Y. April 1, 2014) ("the notion that the parties and the Court will be caught up in litigating hundreds of individualized enforceability arguments seems far-fetched").

- *Ambrosia v. Cogent Communications, Inc.*, 2016 U.S. Dist. LEXIS 242 *8 (N.D. Cal. Jan. 4, 2016) ("[l]eapfrogging step one not only deprives potential plaintiffs of an opportunity to join the suit, but also obliges the Court to proceed on an unsettled record").

- *Sealy v. Keiser Sch., Inc.*, 2011 U.S. Dist. LEXIS 152369, *10, 2011 WL 7641238 (S.D. Fla. Nov. 8, 2011) (conditionally certifying a class under § 216(b), rejecting the defendant's argument that the plaintiff could not meet the similarly situated requirement because the vast majority of the defendant's employees, including nearly all of the opt-in plaintiffs, had signed arbitration agreements).

- *Ali v. Sugarland Petroleum,* 2009 U.S. Dist. LEXIS 118829, *13, 2009 WL5173508 (S.D. Tex. December 22, 2009) (refusing to consider at the notice stage the defendants' argument that certain employees signed arbitration agreements).

- *Gordon v. TBC Retail Group, Inc.*, 2015 U.S. Dist. LEXIS 132490, *27 (D.S.C. Sept. 30, 2015) ("the court finds that the better approach is to

address arbitration issues after conditional certification, when the scope and substance of those issues become clearer.").[4]

In each of the above-cited FLSA cases, notice preceded the arbitration determination, not the other way around.

> [T]he sensible course . . . is to decide whether to certify the class without considering the possibility of arbitration, bring the [putative class] into the case, see what their position is on arbitration, and then decide who must arbitrate. If it turns out that . . . either group, must arbitrate . . . the Court can always decertify, subclassify, or otherwise alter the class later.

*In re Evanston Nw. Corp. Antitrust Litig.*, 2013 WL 6490152, *5 (N.D. Ill. Dec. 10, 2013) (applying Fed.R.Civ.P. 23).[5]  The same result should follow here.

---

[4] *See also Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003); *Krstic v. J.R. Contracting & Envtl. Consulting*, 2011 U.S. Dist. LEXIS 28121 (D.N.J. March 16, 2011); *Amrhein v. Regency Mgmt. Servs., LLC*, 2014 U.S. Dist. LEXIS 36477, *28-30, 2014 WL 1155356 (D. Md. Mar. 20, 2014); *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *Mowdy v. Beneto Bulk Transport*, 2008 U.S. Dist. LEXIS 26233 (N.D. Cal. Mar. 31, 2008); *Hernandez v. Immortal Rise, Inc.*, 2012 U.S. Dist. LEXIS 182348, *5 (E.D.N.Y. Dec. 27, 2012); and *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003).

[5] *See also Whittington v. Taco Bell of America, Inc.*, 2011 U.S. Dist. LEXIS 55292 (D. Col. May 10, 2011) ("The court finds no procedure or authority [in the FAA] to compel putative class members, who are not currently before the court, and, because a class has not yet been certified, have not even received notice of the litigation, to arbitrate their potential claims with Defendants").

**B.     Defendant Has Not Yet Established that Its Arbitration Agreement Is Valid or Actually Applies to Anyone**

It is "Defendant's burden to establish there is a valid written agreement to arbitrate." *Chambers v. Groome Transportation of Alabama*, 41 F. Supp. 3d 1327, 1339 (M.D. Ala. 2014); *see also Barkley v. Pizza Hut of Am., Inc.*, 2014 U.S. Dist. LEXIS 110640, 2014 WL 3908197, *3 (M.D. Fla. Aug. 11, 2014) (same).

Here, Defendant's arbitration agreement suffers from three obvious defects which should be held invalid by the Court, the combination of which should compel the Court to invalidate the arbitration agreement in its entirety. First, Defendant's arbitration agreement contains a "300 day" limitations period (in ¶ 6), which is shorter than the two to three year period provided by the FLSA. 29 U.S.C. § 255(a). Second, Defendant's arbitration agreement contains a confidentiality provision (in ¶ 7) that is contrary to the great weight of FLSA authority. Third, Defendant's arbitration agreement attempts to limit employees' claims to individual arbitrations (in ¶ 8) and does not permit collective arbitration or collective action in any other forum.

The Court has the authority -- and, indeed the duty -- to invalidate these provisions because Defendant's arbitration agreement is silent as to whether the court or the arbitrator is to decide questions of validity. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920 (1995); *Chambers v. Groome Transportation of Alabama*, 41 F. Supp. 3d 1327, 1335 (M.D. Ala. 2014).

8

In fact, with regard to the confidentiality provision, Defendant's agreement expressly states that "[a]ll arbitration proceedings are confidential, *unless applicable law provides otherwise*." (emphasis added). Obviously, courts decide what "applicable law provides," especially where the question involves a remedial statute like the FLSA. Moreover, had Defendant wanted these gateway questions to be decided by the arbitrator instead of the Court, it would have so stated. *Chambers v. Groome Transportation of Alabama*, 41 F. Supp. 3d 1327, 1335 (M.D. Ala. 2014) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]"evidence that they did so") (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45, 115 S. Ct. 1920 (1995)).

### 1. Defendant's Shortening of the Limitations Period Is Prejudicial and Contrary to Law

Courts in the Sixth Circuit have routinely invalidated provisions that attempt to shorten the statute of limitations for FLSA actions. *See*, *e.g.*, *Boaz v. FedEx Customer Info. Servs.*, 725 F.3d 603 (6th Cir. 2013) (declaring a six month limitations period invalid as applied to a FLSA claim); *Pruiett v. W. End Rests., LLC*, No. 3:11-00747, 2011 U.S. Dist. LEXIS 131369, at *16-17 (M.D. Tenn. Nov. 14, 2011) ("Plaintiffs' substantive right to full compensation under the FLSA may not be bargained away. Accordingly, the [one year] contractual limitations provision is unenforceable as to FLSA claims."); *Wineman v. Durkee Lakes*

*Hunting & Fishing Club, Inc.*, 352 F. Supp. 2d 815, 823 (E.D. Mich. 2005) (Lawson, J.) ("this Court cannot enforce the [six month] period of limitations with respect to the FLSA claims in this case because it violates public policy").

Here, Defendant's arbitration agreement contains the following illegal provision:

> **6. Limitations of Actions.** Kelly Services and I agree to bring any claims that each party may have against the other ***within 300 days*** of the day that such party knew, or should have known, of the facts giving rise to the cause of action, and The [sic] parties mutually waive any longer, but not shorter, statutory or other limitations periods. This waiver includes, but is not limited to, the initial filing of a charge with the Equal Employment Opportunity Commission and/or state equivalent civil rights agency. However, I understand that I will thereafter have the right to pursue any federal claim in the manner prescribed in any right to sue letter that is issued by an agency. (emphasis added).

This provision seeks to reduce employee's limitations period from three years to a scant 300 days and it is invalid as a matter of law. *Cf. Boaz*, 725 F.3d at 606; *Wineman*, 352 F. Supp. 2d at 823. Accordingly, the Court should declare that Defendant's limitations provision is invalid.

## 2. Confidentiality Provisions Are So Disfavored In FLSA Cases That Even Defendant Contemplates its Exclusion

Paragraph 7 of Defendant's arbitration agreement is also vague and potentially invalid. It states as follows:

> **7. Confidentiality of Proceedings.** All arbitration proceedings are confidential, ***unless applicable law provides otherwise***. The arbitrator shall maintain the confidentiality of the arbitration ***to the extent the***

10

> *law permits*, and the Arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality. (emphasis added).

This clause and in fact the entire arbitration agreement are silent as to whom shall decide the validity of the agreement. Where the arbitration agreement specifies that matters of interpretation shall be decided by the arbitrator, the law generally affords that result. *See Chambers v. Groome Transportation of Alabama*, 41 F. Supp. 3d 1327, 1337 (M.D. Ala. 2014) (collecting cases). However, where the agreement is silent regarding these matters, the law favors resolution of gateway issues by courts of law.

In *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013), the Sixth Circuit explained this preference as follows:

> [C]ourts presume that so-called "gateway disputes" are "for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (internal quotation marks and alterations omitted). Gateway disputes include "whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (plurality opinion). These matters are important enough that courts "hesitate to interpret silence or ambiguity" as grounds for giving an arbitrator the power to decide them, because "doing so might too often force unwilling parties to

11

arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options*, 514 U.S. at 945.[6]

See also *Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo, Int'l, Inc.*, 560 F. App'x 529, 538 (6th Cir. 2014) ("[t]he mere presence of an arbitration clause in a contract does not remove all questions about the contract from the judicial ken. Questions about "contract formation"—whether the parties ever agreed to the contract in the first place—are "generally for courts to decide.").

Moving on to the substance of the argument, the FLSA evinces "Congress's intent . . . both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015). *See also Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered the national health and efficiency and as a result the free movement of goods in interstate commerce.").

---

[6] FLSA cases and settlements also "indisputably" implicate the "judicial function" because they require judicial approval. The rationale for rejecting confidential FLSA settlements is "particularly strong," since "[s]ealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015).

Confidentiality provisions are particularly inhibiting when coupled with class action waivers because, as courts have recognized, such provisions prevent "the claimant [and] her attorney [from] shar[ing] [] information with other potential claimants." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 42 (2006). And "the unavailability of arbitral decisions may prevent potential plaintiffs from obtaining the information needed to build a case…" and "plaintiffs [will be] unable to mitigate the advantages inherent in being a repeat player." *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1001 (9th Cir. 2010) (noting that "[a]nother indicator of substantive unconscionability is the confidentiality requirement" in an arbitration agreement); *Lima v. Gateway, Inc.*, 886 F. Supp. 2d 1170, 1185 (C.D. Cal. 2012); *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 579 (Ky. 2012).

"[F]ear of copycat lawsuits or embarrassing inquiries" does not "suffice to defeat" these objectives. *Lopez*, 96 F. Supp. 3d at 180; *Wills v. Cellular Sales of Tenn., LLC*, No. 1:12-cv-391-CLC-SKL, 2014 U.S. Dist. LEXIS 114295, at *4 (E.D. Tenn. Aug. 18, 2014) (same). Thus, while "an employee whose rights have been vindicated through the FLSA may inform and encourage other employees to do the same, 'vindication of FLSA rights throughout the workplace is precisely the object Congress chose to preserve and foster through the FLSA.'" *Lopez*, 96 F. Supp. 3d at 180. It is difficult to imagine a scenario in which the parties' interest

in non-disclosure trumps these congressional purposes. *Id.*; *see also Camacho v. Ess-a-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 U.S. Dist. LEXIS 171649, at *10 (S.D.N.Y. Dec. 11, 2014) ("FLSA settlements are judicial documents to which the public's right of access attaches, and ... any countervailing privacy interests [are] outweighed by the public's interest in ensuring that workers receive "[a] fair day's pay for a fair day's work"); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010) (by including a confidentiality provision, the employer thwarts the informational objective of the notice requirement by silencing the employee who has vindicated a disputed FLSA right); *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 646 (S.D.N.Y. 2011) ("[t]he public arguably has a 'special' interest in knowing how . . . these cases were resolved because the cases involve accusations that private actors had violated federal statutes intended to protect workers and minorities"); *Snook v. Valley OB-GYN Clinic, P.C.*, No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *5 (E.D. Mich. Dec. 29, 2014).

In light of this great weight of authority, the Court should declare that Defendant's confidentiality provision is invalid as a matter of law.

### 3.  Defendant's Arbitration Agreement Prohibits Collective Action in Any Forum

Paragraph 8 of Defendant's arbitration agreement is also vague and potentially invalid.  It states as follows:

> **8. Waiver of Class and Collective Claims.** Both Kelly Services and I also agree that ***all claims subject to this agreement will be arbitrated only on an individual basis***, and that both Kelly Services and ***I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding***. No party may bring a claim on behalf of other individuals, and no arbitrator hearing any claim under this agreement may: (i) combine more than one individual's claim or claims into a single case; (ii) order, require, participate in or facilitate production of class-wide contact information or notification of others of potential claims; or (iii) arbitrate any form of a class, collective, or representative proceeding. (emphasis added).

This type of provision was recently found to violate the National Labor Relations Act, 29 U.S.C.S. § 151 *et seq.*, and was also unenforceable under the Federal Arbitration Act, 9 U.S.C.S. § 1 *et seq. See Lewis v. Epic Sys. Corp.*, 2016 U.S. App. LEXIS 9638 (7th Cir. May 26, 2016) (denying employer's motion to compel arbitration because its agreement requiring certain groups of employees to agree to bring any wage-and-hour claims against the company only through individual arbitration did not permit collective arbitration or collective action in any other forum and, therefore, violated the NLRA, and was also unenforceable under the FAA).

In light of Defendant's unlawful attempt to prohibit its employees from acting collectively, the Court should declare Defendant's class waiver provision invalid as a matter of law.

4.    **The Applicability of Defendant's Arbitration Agreement Cannot Be Determined Without Discovery**

Finally, Defendant asks the Court to accept the blanket applicability of its arbitration agreement -- in two different versions, involving hundreds of new hires and hundreds of existing employees from multiple states -- based on the affidavit of a single HR employee.  This determination cannot be sensibly made without discovery after the opt-in period.  *See Guzman*, *Abdulina*, *Amborisa*, and *Gordon, supra*.[7]  It would also be imprudent for the Court to make a categorical ruling about arbitration now, before employees opt in and are able to present their own specific facts and concerns to the Court.  For example, the record already shows that some employees signed Defendant's arbitration agreement at the time they were hired, while other employees were presented with the agreement and made to sign as a condition of their continued employment. These subtle factual differences may produce different results.

---

[7]  Even the case of *Feamster v. CompuCom Systems*, 2016 U.S. Dist. LEXIS 20150 *9, 15 & 16-18 (W.D. Va. Feb. 19, 2016), relied on by Defendant, required discovery to determine who the contractual class waiver provision applied to.  In that case, however, *all three named plaintiffs* were subject to collective action waivers (with no arbitration clause) so the court postponed conditional certification to evaluate each plaintiff's standing to sue.  The *Feamster* decision is contrary to the Sixth Circuit's decision in *Killion v. KeHE Distribs., LLC*, 761 F.3d 574 (6th Cir. 2014), which held that collective action waivers without arbitration provisions are invalid.  *See also Feamster*, 2016 U.S. Dist. LEXIS 20150 at *17 (contrasting the facts in that case with cases like this where only "some of the opt-in class members may have waived their right to participate in a collective action.") (underlines in original).

As the Sixth Circuit explained in *Floss v. Ryan's Family Steak Houses, Inc.*,

211 F.3d 306 (6th Cir. 2000):

> Ryan's has pursued an acceptable objective [i.e., arbitration] in an unacceptable manner.  An employer may enter an agreement with employees requiring the arbitration of all disputes, including those involving federal statutory claims.  Yet an employer cannot seek to do so in such a way that leaves employees with no consideration for their promise to submit their disputes to arbitration.  Here, we find that Floss and Daniels did not receive any consideration for their promise to arbitrate their disputes.  We thus refuse to enforce the promise in favor of Ryan's.

*Id*. at 315.[8]

Here moreover, the agreement is fraught with undefined terms, exceptions, and inconsistencies that may render the entire agreement void or only partially enforceable. *See*, *e.g*., ¶¶ 1-3 of the agreement defining "Covered Claims" (as opposed to all claims and matters) and ***excepting from arbitration "[a]ny claim that cannot be required to be arbitrated as a matter of law."*** (emphasis added).[9] *See also* ¶ 13, stating that "I understand that I may have a statutory right (*e.g.*, under the National Labor Relations Act) to ***act concertedly on behalf of myself and others to challenge this Agreement in any forum***." (emphasis added).  *And*

---

[8] The applicable recital in Defendant's arbitration agreement is found in the second paragraph of the "Internal Dispute Resolution" preamble:  "in consideration of my employment/consideration for employment with Kelly...."

[9] ¶ 3 also includes "unfair competition" in the list of Covered Claims, but ¶ 4 then excludes "unfair competition claims."

*see* ¶ 16, specifying that "if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought as a class, collective or representative action basis ***must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims***." (emphasis added). What these terms mean is anyone's guess; but even Defendant will surely agree that these provisions should be interpreted once, consistently for everyone, rather than serially, by many arbitrators. The same is true of Defendant's invalid "300 day" limitations period and confidentiality provision.[10]

> As Justice Roberts observed (while sitting on the D.C. Circuit):

> If illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts . . . the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties . . . Thus, the more the employer overreaches, the less likely a court will be able to sever the provisions and enforce the clause, a dynamic that creates incentives against the very overreaching Booker fears.

*Booker v. Robert Half Int'l Inc.*, 413 F.3d 77, 84-85 (D.C. Cir 2005). *See also Smith v. Trugreen L.P.*, Case No. 13-10412, 2013 U.S. Dist. LEXIS 163644, at *12-13 (E.D. Mich. Oct. 16, 2013):

> Arbitration under the FAA is "a matter of consent, not coercion." *Albert M. Higley, Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir 2006) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford*

---

[10] Defendant's arbitration agreement also specifies (in ¶ 4) that the "employment dispute resolution rules of the American Arbitration Association ("AAA") effective at the time of filing will apply," however, the AAA has no such similarly titled rule.

*Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)). A party "cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008) (*quoting Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005)). Thus, a court should not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002).

Since determining applicability, mutual assent, and legal consideration all require further factual development, Defendant's motion is premature and should be denied without prejudice.

## IV.   CONCLUSION

Defendant's desire to arbitrate is understandable, but Defendant's arbitration agreement has never been tested in any court of law or arbitration proceeding and Defendant cannot be rewarded for overreaching or for drafting a document that contains vague, inconsistent, and maybe even unconscionable, terms.   For the foregoing reasons, Defendant's Motion should be denied.

Dated:   June 20, 2016                    Respectfully submitted,

                                          */s/ Kevin J. Stoops*
                                          Kevin J. Stoops (P64371)
                                          Jesse L. Young (P72614)
                                          SOMMERS SCHWARTZ, P.C.
                                          One Towne Square, Suite 1700
                                          Southfield, Michigan 48076
                                          248-355-0300
                                          kstoops@sommerspc.com
                                          jyoung@sommerspc.com

*Trial Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 20, 2016, I electronically filed the forgoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Kevin J. Stoops*
kstoops@sommerspc.com